# EXHIBIT C

2020 WL 4724305
Only the Westlaw citation is currently available.
United States District Court, W.D.
Texas, San Antonio Division.

DIESEL BARBERSHOP, LLC; WILDERNESS OAKS CUTTERS, LLC; DIESEL BARBERSHOP BANDERA OAKS, LLC; DIESEL BARBERSHOP DOMINION, LLC; DIESEL BARBERSHOP ALAMO RANCH, LLC; AND HENLEY'S GENTLEMEN'S GROOMING, LLC, Plaintiffs,
v.
STATE FARM LLOYDS, Defendant.

No. 5:20–CV–461–DAE
|
Filed 08/13/2020

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

David Alan Ezra Senior United States District Judge

**\*1** Before the Court is a Motion to Dismiss filed by State Farm Lloyds ("Defendant" or "State Farm") on May 8, 2020. (Dkt. # 9.) Plaintiffs Diesel Barbershop, LLC; Wilderness Oak Cutters, LLC; Diesel Barbershop Bandera Oaks, LLC; Diesel Barbershop Dominion, LLC; Diesel Barbershop Alamo Ranch, LLC; and Henley's Gentlemen's Grooming, LLC (collectively "Plaintiffs") responded on May 22, 2020 (Dkt. # 14), and Defendant filed a reply on May 29, 2020 (Dkt. # 17). The Court presided over a virtual hearing on July 29, 2020, during which Shannon Loyd, Esq., represented Plaintiffs and Neil Rambin, Esq. and Susan Egeland, Esq. represented Defendant. After careful consideration of the memorandum filed in support of and against the motion and after hearing arguments from counsel, the Court—for the reasons that follow—**GRANTS** Defendant's Motion to Dismiss.

### FACTUAL BACKGROUND

On February 11, 2020, the World Health Organization identified the 2019 Coronavirus ("COVID-19") as a disease. Since then, COVID-19 has spread across the world, and health organizations, including the Center for Disease Control ("CDC"), characterize COVID-19 as a global pandemic. (See Dkt. # 8.) The outbreak in the United States is a rapidly evolving situation, and the state of Texas saw an exponential increase in COVID-19 cases. To stop "community spread" of COVID-19, state and local governments have issued executive orders that limit the opening of certain businesses and require social distancing. Bexar County Judge Nelson Wolff and Texas Governor Greg Abbott have issued executive orders throughout this crisis, and below are the relevant orders (the "Orders") for the purposes of this case.

#### a. The Bexar County Orders

County Judge Wolff issued multiple executive orders pertaining to the "state of local disaster ... due to imminent threat arising from COVID-19." (Dkt. # 8, Exh. B.) On March 23, 2020, County Judge Wolff issued an order requiring "all businesses operating within Bexar County" save for those "exempted" to "cease all activities" at any business located in Bexar County from March 24, 2020 until April 9, 2020. (Id.) The order defines exempted businesses as those pertaining to: (a) healthcare services, (b) government functions, (c) education and research, (d) infrastructure, development, operation and construction, (e) transportation, (f) IT services, (g) food, household staples, and retail, (h) services to economically disadvantaged populations, (i) services necessary to maintain residences or support exempt businesses, (j) news media, (k) financial institutions and insurance services, (l) childcare services, (m) worship services, (n) funeral services, and (o) CISA sectors. (Id.) County Judge Wolff notes that he is authorized "to take such actions as are necessary in order to protect the health, safety, and welfare of the citizens of Bexar County" and "has determined that extraordinary emergency measures must be taken to mitigate the effects of this public health emergency and to facilitate a cooperative response" in line with Governor Abbott's "declaration of public health disaster." (Id.)

**\*2** In a supplemental executive order dated April 17, 2020, County Judge Wolff emphasizes that "the continued spread of COVID-19 by pre- and asymptomatic individuals is a significant concern in Bexar County and on April 3, 2020, the [CDC] recommended cloth face coverings be worn by the general public to slow the spread of COVID-19 and implementing this measure would assist in reducing the transmission of COVID-19 in San Antonio and Bexar County." (Id.) The goal of the supplemental order was to "reduce the spread of COVID-19 in and around Bexar

County" and to "continue to protect the health and safety of the community and address developing and the rapidly changing circumstances when presented by the current public health emergency." (Id.)

### b. The State of Texas Order

On March 31, 2020, Texas Governor Greg Abbott signed an executive order closing all "non-essential" businesses from April 2, 2020 until April 30, 2020. (Dkt. # 8, Exh. C.) Governor Abbott's order provides the following:

> NOW, THEREFORE, I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, do hereby order the following on a statewide basis effective 12:01 a.m. on April 2, 2020, and continuing through April 30, 2020, subject to extension based on the status of COVID-19 in Texas and the recommendations of the CDC and the White House Coronavirus Task Force:
>
> In accordance with guidance from DSHS Commissioner Dr. Hellerstedt, and to achieve the goals established by the President to reduce the spread of COVID-19, every person in Texas shall, except where necessary to provide or obtain essential services, minimize social gatherings and minimize in-person contact with people who are not in the same household.
>
> "Essential services" shall consist of everything listed by the U.S. Department of Homeland Security in its Guidance on the Essential Critical Infrastructure Workforce, Version 2.0, plus religious services....
>
> In accordance with the Guidelines from the President and the CDC, people shall avoid eating or drinking at bars, restaurants, and food courts, or visiting gyms, massage establishments, tattoo studios, piercing studios, or cosmetology salons; provided, however, that the use of drive-thru, pickup, or delivery options for food and drinks is allowed and highly encouraged throughout the limited duration of this executive order.

(Dkt. # 8, Exh. C.)

### c. Plaintiffs' Insurance Policies

Plaintiffs run barbershop businesses; a type of business deemed non-exempt and non-essential under the Orders. (Dkt. # 8.) State Farm issued insurance policies (the "Policies")[1] to Plaintiffs regarding the insured properties (the "Properties") that are subject of this dispute. (See Dkt. # 9, Exhs. A-1–A-6.)

The Policies state, in relevant part, the following:

> When a Limit Of Insurance is shown in the Declarations for that type of property as described under Coverage A – Buildings, Coverage B – Business Personal Property, or both, we will pay for accidental direct physical loss to that Covered Property at the premises described in the Declarations caused by any loss as described under SECTION I — COVERED CAUSES OF LOSS.

(Id.) The Policies note in Section I–Covered Causes of Loss that State Farm will "insure for accidental direct physical loss to Covered Property" unless the loss is excluded under Section I–Exclusions or limited in the Property Subject to Limitations provision. (Id.) The Policies further contain a "Fungi, Virus, or Bacteria" exclusion (the "Virus Exclusion"), which contains lead-in language and states the following:

> **\*3** 1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> ...
>
> **j. Fungi, Virus Or Bacteria**
>
> ...

> (2) Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Id.) The Policies also contain an endorsement modifying the businessowners coverage form, including a Civil Authority provision which states in relevant part:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual "Loss of Income" you sustain and necessary "Extra Expense" caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> 1. Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> 2. The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Id.) There are various other exclusions within the Policies including for example, the "Ordinance or Law," the "Acts or Decisions" and the "Consequential Loss" exclusions. (Dkt. # 9.)

## PROCEDURAL HISTORY

Plaintiffs assert that due to the COVID-19 outbreak and the Orders, Plaintiffs "have sustained and will sustain covered losses" under the terms of the Policies. (Dkt. # 8.) Plaintiffs filed a claim with State Farm seeking coverage for business interruption to the Properties pursuant to the Policies in March 2020. (Id.) Without seeking additional documentation or information, and without further investigation, State Farm denied Plaintiffs' claims. (Dkt. # 8, Exh. D.) In the denial letter, State Farm asserted that Plaintiffs' claims are not covered as the "policy specifically excludes loss caused by enforcement of ordinance or law, virus, and consequential losses." (Id.) State Farm argued that there is a requirement "that there be physical damage, within one mile of the described property" and "that the damage be the result of a Covered Cause of Loss" which, State Farm asserted, a "virus is not." (Id.)

Plaintiffs sued State Farm in state court on April 8, 2020, after State Farm denied Plaintiffs coverage. (Dkt. # 1, Exh. C.) Defendant timely removed the action to this Court on April 13, 2020. (Dkt. # 1.) In their second amended complaint, Plaintiffs bring claims of breach of contract, noncompliance with the Texas Insurance Code, and breach of the duty of good faith and fair dealing. (Dkt. # 8.) Attached to Plaintiffs' second amended complaint are the Policies, Orders, and State Farm's letter denying coverage.

On May 8, 2020, State Farm filed a motion to dismiss for failure to state a claim. (Dkt. # 9.) The Court granted the parties' joint motion to stay discovery pending a ruling on the motion to dismiss on May 18, 2020. (Dkt. # 12.) Plaintiffs responded to the motion to dismiss on May 22, 2020 (Dkt. # 14), and a week later, Defendant filed its reply (Dkt. # 17). Defendant filed a notice of supplemental authority on July 14, 2020 (Dkt. # 21), and Plaintiffs filed a notice of supplemental authority on July 28, 2020 (Dkt. # 22). The Court held a virtual hearing on this matter on July 29, 2020. Defendant filed an additional notice of supplemental authority on August 7, 2020 (Dkt. # 25), and Plaintiffs filed another notice of supplemental authority on August 12, 2020 (Dkt. # 27). Defendant filed its third notice of supplemental authority on August 13, 2020 (Dkt. # 28), notifying the Court of the United States Judicial Panel on Multidistrict Litigation's decision to deny the creation of an industry-wide multidistrict litigation. (Id., Exh. A.)

## TEXAS CONTRACT-INTERPRETATION STANDARDS

**\*4** "Insurance policies are contracts and are governed by the principles of interpretation applicable to contracts." Amica Mut. Ins. Co. v. Moak, 55 F.3d 1093, 1095 (5th Cir. 1995). Under Texas contract-interpretation standards, the "paramount rule is that courts enforce unambiguous policies as written" such that court must "honor plain language, reviewing policies as drafted, not revising them as desired." Pan Am Equities, Inc. v. Lexington Ins. Co., 959 F.3d 671, 674 (5th

Cir. 2020). Importantly, an "ambiguity" is "more than lack of clarity"; a court should find an insurance contract ambiguous only if "giving effect to all provisions, its language is subject to two or more reasonable interpretations." Id.

(internal quotation marks and citation omitted). To determine ambiguity, which is a question of law, a court must "examine the entire contract in order to harmonize and give effect to all provisions so that none will be meaningless." Id. (internal quotation marks and citation omitted); see also Provident Life & Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003) ("In interpreting these insurance policies as any other contract, we must read all parts of each policy together and exercise caution not to isolate particular sections or provisions from the contract as a whole."); State Farm Lloyds v. Page, 315 S.W.3d 525, 527 (Tex. 2010) ("The fact that the parties may disagree about the policy's meaning does not create an ambiguity." (citations and internal quotation marks omitted)). "The goal in interpreting ... [language within the contract] is to ascertain the true intentions of the parties as expressed in the writing itself." Richards v. State Farm Lloyds, No. 19-0802, 2020 WL 1313782, at *5 (Tex. Mar. 20, 2020) (citation and internal quotation marks omitted).

### RULE 12(b)(6) LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In analyzing whether to grant a Rule 12(b)(6) motion, a court accepts as true "all well-pleaded facts" and views those facts "in the light most favorable to the plaintiff." United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F. 3d 343, 346 (5th Cir. 2013) (citation omitted). A court need not "accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Furthermore, in assessing a motion to dismiss under Rule 12(b)(6), a court's review is generally limited to the complaint, documents attached to the complaint, and any documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's claims. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).

### DISCUSSION

State Farm argues that for business income coverage to apply, the Policies explicitly require (1) an accidental direct physical loss to the insured property and (2) that the loss is not excluded. (Dkt. # 9.) Defendant asserts that Plaintiffs fail to properly plead direct physical loss to the Properties as Plaintiffs argue that the Orders are the reason for the business interruption claim and fail to show that the Properties have been tangibly "damaged" per se. (Dkts. ## 9, 17.) Defendant also argues that regardless, Plaintiffs fail to overcome the Virus Exclusion hurdle that is unambiguously within the Policies and was added to these Policies in response to the SARS pandemic in the early 2000s. (Id.)

*5 In response, Plaintiffs assert that the language in the Policies does not require a tangible and complete physical loss to the Properties, but rather allows for a partial loss to the Properties, which includes the loss of use of the Properties due to the Orders restricting usage of the Properties. (Dkt. # 14.) Plaintiffs also argue that it is not COVID-19 within Plaintiffs' Properties that caused the loss directly, but rather that it was the Orders that caused the direct physical loss and thus the Virus Exclusion should not apply. (Id.) Plaintiffs also argue that the Orders were issued to protect public health and welfare, and that Plaintiffs claims thus fall under the Civil Authority provision within the Policies. (Id.)

Based on the parties' filings, plain language of the Policies in question, and argument at the hearing, as much as the Court sympathizes with Plaintiffs' situation, the Court determines that the motion to dismiss must be granted for the following reasons.

#### a. Accidental Direct Physical Loss

This Court is mandated to "honor plain language, reviewing policies as drafted, not revising them as desired." Pan Am Equities, 959 F.3d at 674. The Court looks at the coverage provided by the Policies as a whole in order to determine the plain language. Id. Here, the Policies are explicit that there has to be an accidental, direct physical loss to the property in question. The Court agrees with Plaintiffs that some courts

have found physical loss even without tangible destruction to the covered property. See e.g., TRAVCO Ins. Co. v. Ward, 715 F. Supp. 2d 699, 708 (E.D. Va. 2010), aff'd, 504 F. App'x 251 (4th Cir. 2013) (noting that "physical damage to the property is not necessary, at least where the building in question has been rendered unusable by physical forces"); Murray v. State Farm Fire & Cas. Co., 203 W. Va. 477, 493 (1998) (" 'Direct physical loss' provisions require only that a covered property be injured, not destroyed. Direct physical loss also may exist in the absence of structural damage to the insured property." (citation omitted)). The Court also agrees that a virus like COVID-19 is not like a hurricane or a hailstorm, but rather more like ammonia, E. coli, and/or carbon monoxide (i.e. cases in which the loss is caused by something invisible to the naked eye), and in such cases, some courts have found direct physical loss despite the lack of physical damage. See e.g., Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co., 311 F.3d 226, 236 (3d Cir. 2002) (holding that while mere installation of asbestos was not loss or damage, the presence or imminent threat of a release of asbestos would "eliminate[ ] or destroy[ ]" the function of the structure, thereby making the building "useless or uninhabitable"); Lambrecht & Assocs., Inc. v. State Farm Lloyds, 119 S.W.3d 16, 24–26 (Tex. App. 2003) (noting that while State Farm argued that the losses were not "physical" as they were not "tangible," the court found that under the "direct language" of the policy allowed for coverage to "electronic media and records" and the "data stored on such media" as "such property is capable of sustaining a 'physical' loss"); Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 406 (1st Cir. 2009) ("We are persuaded both that odor can constitute physical injury to property ... and also that allegations that an unwanted odor permeated the building and resulted in a loss of use of the building are reasonably susceptible to an interpretation that physical injury to property has been claimed.").

Even so, the Court finds that the line of cases requiring tangible injury to property are more persuasive here and that the other cases are distinguishable. See Dickie Brennan & Co. v. Lexington Ins. Co., 636 F.3d 683, 686 (5th Cir. 2011) (affirming summary judgment and holding that there was no coverage under the civil authority provision of the policy as plaintiffs "failed to demonstrate a nexus between any prior property damage and the evacuation order" when the city issued a mandatory evacuation order prior to the arrival of a hurricane and plaintiffs allegedly suffered business interruption losses); United Air Lines, Inc. v. Ins. Co. of State of PA, 439 F.3d 128, 134 (2d Cir. 2006) (determining that United could not show that its lost earnings resulted from physical damage to its property or from physical damage to an adjacent property when the government shut down the airport after the 9/11 terrorist attacks). For instance, unlike Essex Ins. Co., COVID-19 does not produce a noxious odor that makes a business uninhabitable. It appears that within our Circuit, the loss needs to have been a "distinct, demonstrable physical alteration of the property." Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co., 181 F. App'x 465, 470 (5th Cir. 2006) ("The requirement that the loss be "physical," given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." (citation omitted)); see also Ross v. Hartford Lloyd Ins. Co., 2019 WL 2929761, at *6–7 (N.D. Tex. July 4, 2019) ("direct physical loss" requires "a distinct, demonstrable, physical alteration of the property" (citing 10A Couch on Ins. § 148:46 (3d ed. 2010)).) Thus, the Court finds that Plaintiffs fail to plead a direct physical loss.

### b. The Virus Exclusion

**\*6** Even if the Court had found that the language within the Policies was ambiguous and/or that Plaintiffs properly plead direct physical loss to the Properties, the Court finds that the Virus Exclusion bars Plaintiffs' claims. The language in the lead-in of the Virus Exclusion (also called the anti-concurrent causation ("ACC") clause) expressly states that State Farm does not insure for a loss regardless of "whether other causes acted concurrently or in any sequence within the excluded event to produce the loss." (See Dkt. # 9, Exhs. A-1–A-6.) Here, Plaintiffs allege that the loss of business occurred as a result of the Orders that mandated non-essential businesses to discontinue operations for a set period of time to help staunch community spread of COVID-19. (Dkts. ## 8, 14.) Plaintiffs also assert that the Court should find that the Virus Exclusion does not apply because COVID-19 was not present at the Properties. (Id.)

The Court notes that the parties vehemently dispute how to read the lead-in language to the Virus Exclusion. Defendant cites Tuepker v. State Farm Fire & Cas. Co., 507 F.3d 346 (5th Cir. 2007) in support of the argument that the lead-in

language to the Virus Exclusion bars Plaintiffs' claims and that the lead-in language is unambiguous and enforceable. Meanwhile, Plaintiffs cite [Stewart Enterprises, Inc. v. RSUI Indem. Co., 614 F.3d 117 (5th Cir. 2010)](#) in support of their assertion that the lead-in language does not exclude coverage here.

The Court finds the facts in Stewart Enterprises distinguishable from the facts here. There, the ACC clause was within a policy provided by Lexington Insurance Company and contained different language than the ACC clause in State Farm's Policies here. See [Stewart Enterprises, 614 F.3d at 125](#) (noting in the ACC clause that "this policy does not insure against loss or damage caused directly or indirectly by any of the excluded perils" as "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss"). In addition, the issue in Stewart Enterprises was that the insurer was seeking "to use the ACC clause to bar recovery for damage caused by two included perils." [Id. at 126](#) (emphasis added). The Fifth Circuit rightly decided there that it would be absurd to "read the policy to force Stewart to prove a windless flood." [Id. at 127](#).

But here, the Court can read the Policies objectively and without "creating difficult causation determination where none otherwise exist." Id. Like the Fifth Circuit in Tuepker, the Court finds that here, the State Farm ACC clause within the Policies is unambiguous and enforceable. See [Tuepker, 507 F.3d at 356](#). The Policies expressly state that State Farm does not "insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these[.]" (See Dkt. # 9, Exhs. A-1–A-6.) Guided by the plain language of the Policies, the Court finds that Plaintiffs have pleaded that COVID-19 is in fact the reason for the Orders being issued and the underlying cause of Plaintiffs' alleged losses. While the Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community. Thus, it was the presence of COVID-19 in Bexar County and in Texas that was the primary root cause of Plaintiffs' businesses temporarily closing. Furthermore, while the Virus Exclusion could have been even more specifically worded, that alone does not make the exclusion "ambiguous." See [In re Katrina Canal Breaches Litig., 495 F.3d 191, 210 (5th Cir. 2007)](#) ("The fact that an exclusion could have been worded more explicitly does not necessarily make it ambiguous.").

**\*7** Thus, the Court finds that the Policies' ACC clause excluded coverage for the losses Plaintiffs incurred in complying with the Orders. See, e.g., [JAW The Pointe, L.L.C. v. Lexington Ins. Co., 460 S.W.3d 597, 610 (Tex. 2015)](#) ("Because the covered wind losses and excluded flood losses combined to cause the enforcement of the ordinances concurrently or in a sequence, we agree with the court of appeals that the policy's anti-concurrent-causation clause excluded coverage for JAW's losses."). Thus, even if the Court found direct, physical loss to the Properties, the Virus Exclusion applies and bars Plaintiffs' claims.

### c. The Civil Authority Provision

In light of the foregoing, the Court also finds that the Civil Authority provision within the Policies is not triggered. Plaintiffs' recovery remains barred due to the unambiguous nature of the events that occurred, causing the Virus Exclusion to apply such that Plaintiffs fail to allege a legally cognizable "Covered Cause of Loss." See [Dickie Brennan, 636 F.3d at 686–87](#) ("[C]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property.").

### CONCLUSION

The Court finds merit in Defendant's arguments and determines that Plaintiffs' breach of contract, Texas Insurance Code,[2] and breach of duty of good faith and fair dealing claims all fail. While there is no doubt that the COVID-19 crisis severely affected Plaintiffs' businesses, State Farm cannot be held liable to pay business interruption insurance on these claims as there was no direct physical loss, and even if there were direct physical loss, the Virus Exclusion applies to bar Plaintiffs' claims. Given the plain language of the insurance contract between the parties, the Court cannot

deviate from this finding without in effect re-writing the Policies in question. That this Court may not do.

For the reasons stated above, the Motion to Dismiss (Dkt. # 9) is **GRANTED**. Because allowing Plaintiffs leave to amend their claims would be futile, the Court **DISMISSES** Plaintiffs' claims. The Clerk's office is instructed to **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATE:** San Antonio, Texas, August 13, 2020.

**All Citations**

Slip Copy, 2020 WL 4724305

## Footnotes

1  Defendant attaches each Plaintiff's policy and endorsement to the policy to the motion to dismiss. (See Dkt. # 9, Exhs. A-1–A-6.) Defendant asserts that "the relevant provisions of the policies are identical" (Dkt. # 9), and thus this Court shall cite the policies together without analyzing each Plaintiff's policy separately.

2  Plaintiffs expressly seek to drop their allegation of misrepresentation pending further discovery in light of this Court's ruling in Brasher v. State Farm Lloyds, 2017 WL 9342367, at *7 (W.D. Tex. Feb. 2, 2017). (Dkt. # 14.)