# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TUREK ENTERPRISES, INC., d/b/a
ALCONA CHIROPRACTIC,

                    Plaintiff,

v                                        Case No. 20-11655
                                        Honorable Thomas L. Ludington

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
STATE FARM FIRE AND CASUALTY
COMPANY,

                    Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
AND DISMISSING PLAINTIFF'S COMPLAINT WITH PREJUDICE**

On June 23, 2020, Plaintiff Turek Enterprises, Inc., d/b/a Alcona Chiropractic, filed a complaint against Defendants State Farm Mutual Automobile Insurance Company ("State Farm Automobile") and State Farm Fire and Casualty Company ("State Farm Casualty"), on behalf of itself and all others similarly situated. Plaintiff alleges that Defendants failed to compensate Plaintiff's loss of income and extra expense as required by an insurance contract between the parties. Plaintiff seeks damages for breach of contract as well as a declaratory judgment that the insurance contract covers the loss of income and extra expense incurred by Plaintiff and all others similarly situated. On July 15, 2020, Defendants moved to dismiss the complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). ECF No. 12. Timely response and reply briefs were filed. ECF Nos. 16, 19. For the reasons stated below, the motion to dismiss will be granted, and the complaint will be dismissed with prejudice.

**I.**

Plaintiff is a Michigan corporation operating a chiropractic office in Alcona County, Michigan. ECF No. 1 at PageID.5. State Farm Casualty and State Farm Automobile are both Illinois corporations with headquarters in Chicago, Illinois. *Id.* at PageID.6. State Farm Casualty is licensed to operate in Michigan, where it sells insurance to businesses like Plaintiff. *Id.* On May 22, 2019, Plaintiff entered into a one-year term, "all-risk" insurance contract (the "Businessowners Insurance Policy" or the "Policy") with State Farm Casualty. *Id.* at PageID.5.

**A.**

The first section of the Policy, entitled "Section I – Property," contains the general terms and limits of coverage and includes two important subsections, "Section I – Covered Cause of Loss" and "Section I – Exclusions."[1] ECF No. 12-4 at PageID.171–73. Pursuant to Section I – Covered Cause of Loss, the Policy "insur[es] for accidental direct physical loss to Covered Property," unless the loss is excluded by Section I – Exclusions or limited in the "Property Subject to Limitations" provision. *Id.* at PageID.172.

The Policy divides "Covered Property" into two groups, "Coverage A – Buildings" and "Coverage B – Business Personal Property." *Id.* at PageID.171. The two groups broadly cover the personal property and buildings used in the insured's business, with some limitations provided in the subsection "Property Not Covered." *Id.* The Policy also covers loss of income and extra expense (commonly referred to as "business interruption losses") through an endorsement to the Policy identified as "CMP-4905.1 Loss of Income and Extra Expense" (the "Endorsement"):

---

[1] Plaintiff did not file the full Policy as an exhibit to the complaint, so reference is frequently made to the Policy as included in Defendants' motion to dismiss. *See* ECF No. 12-4.

1. Loss of Income

   a. We will pay for the actual "Loss of Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause Of Loss . . .

2. Extra Expense

   a. We will pay necessary "Extra Expense" you incur during the "period of restoration" that you would not have incurred if there had been no accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause Of Loss . . .

                                    […]

4. Civil Authority

   a. When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual "Loss Of Income" you sustain and necessary "Extra Expense" caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

      (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

      (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

ECF No. 1 at PageID.63–64 (bolding omitted).[2] This coverage is provided "subject to the provisions of Section I – Property," which includes Section I – Exclusions. ECF No. 1 at

---

[2] The Endorsement further defines "Loss of Income" and "Extra Expense," but the precise definition of each term is irrelevant for purposes of this order.

- 3 -

PageID.63. Section I – Exclusions provides a lengthy list of exclusions under the Policy. The section provides, in relevant part:

1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the other excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

[. . .]

   j. Fungi, Virus, Or Bacteria

   (1) Growth, proliferation, spread or presence of "fungi" or wet or dry rot; or

   (2) Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness, or disease; and

   (3) We will also not pay for:

   (a) Any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the escribed premises or location of the rebuilding, repair, or replacement of that property, by "fungi", wet or dry rot, virus, bacteria or other microorganism.

   (b) Any remediation of "fungi", wet or dry rot, virus, bacteria or other microorganism . . .

   (c) The cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of "fungi", wet or dry rot, virus, bacteria or other microorganism, whether performed prior to, during or after removal, repair, restoration or replacement of Covered Property.

   This exclusion does not apply if "fungi", wet or dry rot, virus, bacteria or other microorganism results from an accidental direct physical loss caused by fire or lightning.

ECF No. 12-4 at PageID.173–74 (emphasis omitted). The first numbered paragraph is referred to as the "Anti-Concurrent Causation Clause." The subsection governing fungi, viruses, and bacteria

- 4 -

is referred to as the "Virus Exclusion."[3] Insurers began to add the Virus Exclusion and similar terms to contracts in 2006, after the severe acute respiratory syndrome ("SARS") outbreak. ECF No. 1 at PageID.16–17, 92. A 2006 Insurance Services Office circular (the "ISO circular") explained that insurers were "presenting an exclusion relating to contamination by disease-causing viruses or bacteria or other disease-causing microorganisms."[4] *Id.* at PageID.93.

### B.

The first recorded case of the 2019 novel coronavirus ("COVID-19") in Michigan was reported on March 10, 2020.  The next day, the World Health Organization declared COVID-19 a pandemic. On March 24, 2020, the Governor of the State of Michigan issued Executive Order 2020-21 (the "Order"). ECF No. 1 at PageID.2. The Order is entitled "Temporary requirement to suspend activities that are not necessary to sustain or protect life." ECF No. 16-4. The Order states, in relevant part:

> To suppress the spread of COVID-19, to prevent the state's health care system from being overwhelmed, to allow time for the production of critical test kits, ventilators, and personal protective equipment, and to avoid needless deaths, it is reasonable and necessary to direct residents to remain at home or in their place of residence to the maximum extent feasible.
>
> This order takes effect on March 24, 2020 at 12:01 am, and continues through April 13, 2020 at 11:59 pm.
>
> Acting under the Michigan Constitution of 1963 and Michigan law, I order the following:
>
> […]
>
> 4. No person or entity shall operate a business or conduct operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations.

---

[3] Section I – Exclusions includes three additional exclusions, among others: the "Ordinance or Law," "Acts or Decisions," and "Consequential Losses" exclusions. *See* ECF No. 12-4. While Defendants partially rely on these exclusions, it is unnecessary to decide their application for reasons stated in Section III.B.2., *infra*.

[4] Insurance Services Office is the industry trade group that drafts form policies for the American liability insurance market.

*Id.* at PageID.424–25. On May 21, 2020, the Order was amended to require that businesses like Plaintiff's perform structural alterations to the premises before resuming operations. ECF No. 1 at PageID.13.

### C.

On March 24, 2020, Plaintiff suspended all business operations in compliance with the Order. As a result, Plaintiff lost the use of its Covered Property until at least May 28, 2020.[5] ECF No. 1 at PageID.12–14. On May 22, 2020, Plaintiff renewed the Policy with State Farm Casualty for a new term expiring on May 22, 2021. *Id.* at PageID.5. On June 4, 2020, Plaintiff made a claim with State Farm Casualty for loss of income and extra expense as a result of the Order. *Id.* at PageID.15, 81. State Farm Casualty denied Plaintiff's claim in writing, stating:

> This is a follow up to our conversation on 06-04-20. You are making a claim for Loss of Income due to COVID-19. You advised that you [sic] business has been affected by the government mandate related to COVID-19 as you have been only able to do emergency services because of this mandate. Our investigation indicates that the insured property has not sustained accidental direct physical loss. There are exclusions for virus [sic], enforcement of ordinance or law, and consequential losses . . .

*Id.* at PageID.81. The letter then recited the terms of the Policy described above, specifically Section I – Covered Cause of Loss, Section I – Exclusions, and the Endorsement. *Id.*

### D.

On June 23, 2020, Plaintiff filed a complaint against Defendants on behalf of itself and all others similarly situated. ECF No. 1. Plaintiff alleges that Defendants breached the Policy by failing to cover Plaintiff's loss of income and extra expense incurred by compliance with the Order. *Id.* Plaintiff contends that such losses fall within the Loss of Income, Extra Expense, and Civil

---

[5] Plaintiff's response brief indicates that Plaintiff could "resume use of its property" after an amendment to the Order on May 28, 2020. ECF No. 16 at PageID.309.

Authority sections of the Endorsement. *Id.* at PageID.14. With respect to the Virus Exclusion, Plaintiff maintains that the Order was the sole cause of its losses. *Id.* at PageID.14–15.The Order, according to Plaintiff, was issued "to ensure the *absence* of the virus, or persons carrying the virus, from the Plaintiff's premises," and "there is no evidence at all that the virus did enter Plaintiff's property or that it had to be de-contaminated." *Id.* at PageID.4, 17 (emphasis in original).

Plaintiff also alleges that Defendants have issued "hundreds or thousands" of identical or substantially similar policies to businesses across Michigan. *Id.* at PageID.10. Plaintiff alleges that these businesses, like Plaintiff, have suffered losses from the Order that Defendants have wrongly refused to cover. *Id.* at PageID.13. Accordingly, Plaintiff seeks damages for its losses and a declaratory judgment that the Policy covers the loss of income and extra expense sustained. *Id.* at PageID.38–39. Plaintiff seeks this relief on behalf of itself and three proposed classes that correspond to types of Endorsement coverage: The Loss of Income Coverage Class, the Extra Expense Coverage Class, and the Civil Authority Coverage Class. *Id.* Counts I, III, and V are for declaratory relief. Counts II, IV, and VI are for breach of contract.

On July 15, 2020, Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. ECF No. 15. Plaintiff filed a timely response, to which Defendants replied. ECF Nos. 16, 19.

## II.

### A.

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movants' favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439

(6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 679–79 (quotations and citation omitted).

## B.

Plaintiff asserts federal diversity jurisdiction pursuant to 28 U.S.C. § 1332, so Michigan law applies. Michigan's principles of contract interpretation are well-settled. "[A]n insurance contract must be enforced in accordance with its terms." *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999). "Terms in an insurance policy must be given their plain meaning and the court cannot create an ambiguity where none exists." *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 505 (Mich. 1995) (internal quotation marks omitted). Michigan defines "an ambiguity in an insurance policy to include contract provisions capable of conflicting interpretations." *Auto Club Ins. Ass'n v. DeLaGarza*, 444 N.W.2d 803, 805 (Mich. 1989). Ambiguous terms "are construed against its drafter and in favor of coverage." *Id.* at 806.

"Michigan courts engage in a two-step analysis when determining coverage under an insurance policy: (1) whether the general insuring agreements cover the loss and, if so, (2) whether an exclusion negates coverage." *K.V.G. Properties, Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 821 (6th Cir. 2018) (citing *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 841 (Mich. 1997)). Policy provisions, such as exclusions, are valid "as long as [they are] clear, unambiguous and not

in contravention of public policy." *Harrington*, 565 N.W.2d at 841 (internal quotation marks omitted).

## III.

Defendants' principal argument is that Plaintiff's business interruption losses were not caused by a Covered Cause of Loss. Specifically, Defendants argue (1) that Plaintiff's losses are not the result of an "accidental direct physical loss to Covered Property," and (2) that even if they were, they are excluded by the Virus Exclusion or some other exclusion, such as the Ordinance or Law, Acts or Decisions, or Consequential Losses exclusions. ECF No. 12 at PageID.133–43. Defendants further argue that Plaintiff's request for declaratory relief is redundant, and that State Farm Automobile was not a party to the Policy. *Id.* at PageID.151–52. The parties also dispute the applicability of the Loss of Income, Extra Expense, and Civil Authority sections of the Endorsement, but these disputes are tangential because the applicability of each section turns on whether Plaintiff has alleged a Covered Cause of Loss. *See* ECF No. 1 at PageID.63–64.[6]

### A.

The threshold question is whether Plaintiff suffered an "accidental direct physical loss to Covered Property." The Policy does not define the term "direct physical loss," and the parties offer different interpretations. Defendants contend that the term requires "tangible damage" to Covered Property, like the damage one could expect from a fire. ECF No. 12 at PageID.139–40. Plaintiff offers the broader interpretation that "direct physical loss" includes "loss of use." ECF No. 16 at PageID.302–03. Under this view, any event rendering Covered Property "unusable or uninhabitable" would trigger coverage, regardless of whether any tangible damage to the property resulted. *Id.* Importantly, Plaintiff is adamant that COVID-19 never entered its premises. ECF No.

---

[6] As mentioned previously, the coverage offered under each section is "subject to the provisions of Section I – Property." ECF No. 1 at PageID.63.

1 at PageID.17. According to Plaintiff, its loss of income and extra expense arise only from its suspension of operations in compliance with the Order. *Id.* at PageID.3. As a result, Plaintiff's entire case turns on the construction of "direct physical loss."[7]

While Michigan courts have not interpreted the term "direct physical loss," the Sixth Circuit Court of Appeals interpreted a similar term in *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 572 (6th Cir. 2012). In *Universal*, the plaintiff brought action against its insurer, alleging that it suffered a "direct physical loss or damage to" property after it was forced to vacate its building for mold remediation. *Universal*, 475 F. App'x at 572. The district court found that "direct physical loss or damage" required "tangible damage" and entered summary judgment for the defendants. *Id.* at 571. The Sixth Circuit affirmed, noting that "[the plaintiff] did not experience any form of 'tangible damage' to its insured property" and that its losses were not "physical losses, but economic losses." *Id.* at 573. In so holding, the Sixth Circuit found *de Laurentis v. United Servs. Auto. Ass'n*, 162 S.W.3d 714 (Tex. App. 2005), to be persuasive. In *de Laurentis*, the Texas Court of Appeals held that "physical loss" required "tangible damage" after analyzing the dictionary definitions of "physical" and "loss." *De Laurentis*, 162 S.W.3d at 723. *De Laurentis* "provid[ed] insight into how the Michigan courts would interpret the phrase 'direct physical loss'" because the Michigan Court of Appeals had previously relied on *de Laurentis* to interpret the word "direct." *Universal*, 475 F. App'x at 573.

As Plaintiff correctly notes, the Sixth Circuit considered the possibility that Michigan courts would reach a different interpretation of "direct physical loss." *Id.* at 574 (collecting cases holding that "'physical loss' occurs when real property becomes 'uninhabitable' or substantially 'unusable'"). Contrary to Plaintiff's suggestion, however, the Sixth Circuit did not "approve" of

---

[7] Plaintiff does argue that it stated "tangible damage" by cursory reference to one paragraph in the complaint, but for reasons stated below, this argument is rejected. ECF No. 16 at PageID.302.

Plaintiff's interpretation and, in fact, held that "even if Michigan were to adopt it," the *Universal* plaintiff would "still not be entitled to coverage." *Id.* Moreover, the term in this case presents a stronger argument for Defendants than the term in *Universal*. The term here is "direct physical loss," not "direct physical loss *or* damage." Consequently, reading "direct physical loss" to require tangible damage does not risk redundantly interpreting "loss" and "damage." *See Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003) ("[C]ourts must [] give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory.").

Furthermore, Defendants offer the only interpretation resembling the "plain and ordinary meaning" of "direct physical loss." *See McGrath v. Allstate Ins. Co.*, 802 N.W.2d 619, 622 (Mich. App. 2010) (citing C*itizens Ins. Co. v. Pro-Seal Serv. Grp., Inc.*, 730 N.W.2d 682, 687 (Mich. 2007)) (internal citations omitted). Michigan courts determine a word's ordinary meaning by consulting a dictionary. *Id.* Merriam-Webster Dictionary defines "physical" as "having material existence; perceptible especially through the senses and subject to the laws of nature." *Physical, Merriam-Webster*, https://www.merriam-webster.com/dictionary/physical (last visited Aug. 31, 2020). Here, "physical" is an adjective modifying "loss," which is defined as, *inter alia*, "destruction, ruin," "the act of losing possession," and "a person or thing or an amount that is lost." *Loss, Merriam-Webster*, https://www.merriam-webster.com/dictionary/loss (last visited Aug. 31, 2020).

Plaintiff suggests that "physical loss to Covered Property" includes the inability to use Covered Property. ECF No. 16 at PageID.306. This interpretation seems consistent with one definition of "loss" but ultimately renders the word "to" meaningless.[8] "To" is used here as a

---

[8] Of course, the fact that a word can be defined in more than one way does not make the relevant term ambiguous. "Most, if not all, words are defined in a variety of ways in each particular dictionary, as well as being defined

preposition indicating contact between two nouns, "direct physical loss" and "Covered Property." *To, Merriam-Webster*, https://www.merriam-webster.com/dictionary/to (last visited Aug. 31, 2020). Accordingly, the plain meaning of "direct physical loss to Covered Property" requires that there be a loss *to* Covered Property; and not just any loss, a *direct physical loss*.[9] Plaintiff's interpretation would be plausible if, instead, the term at issue were "accidental direct physical loss *of* Covered Property."[10] *See Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 838 (8th Cir. 2006) ("[T]he policy's use of the word 'to' in the policy language 'direct physical loss *to* property' is significant. [The claimant's] argument might be stronger if the policy's language included the word 'of' rather than 'to,' as in 'direct physical loss *of* property' or even 'direct loss *of* property.'") (emphasis original).

Defendants' interpretation is also consistent with recent COVID-19-related cases interpreting similar or identical terms. In *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020), the Western District of Texas addressed facts nearly identical to this case. The *Diesel* plaintiffs sought damages from a State Farm insurer that refused to compensate business interruption losses incurred by COVID-19-related "shutdown" orders. *Diesel Barbershop, LLC*, 2020 WL 4724305, at *3. The *Diesel*

---

differently in different dictionaries . . . [The Michigan Supreme Court] refuses to ascribe ambiguity to words in the English language simply because dictionary publishers are obliged to define words differently to avoid possible plagiarism." *Upjohn*, 476 N.W.2d at 398 n. 8.

[9] Plaintiff's interpretation also risks rendering the word "physical" meaningless. If "physical loss to Covered Property" includes the inability to use Covered Property, then it is unclear why the same meaning could not be conveyed by "loss to Covered Property." Presumably, any "loss of use" would be "physical" insofar as the cause of the loss or the Covered Property itself has some physical existence.

[10] Plaintiff's reliance on *Duronio v. Merck & Co.*, No. 267003, 2006 WL 1628516 (Mich. Ct. App. June 13, 2006), is misplaced. *Duronio* concerned a product liability statute, and its expansive definition of "damage to property" turned on the statutory scheme at issue and the traditional understanding of "property" as a collection of common law rights. *Duronio*, 2006 WL 1628516 at *3. By contrast, Covered Property is a well-defined term referring to buildings and personal property used in the insured's business. ECF No. 12-4 at PageID.171.

plaintiffs suffered no tangible damage to property but alleged that loss of use was sufficient. *Id.* at 5\*. The insurance policy included the same material terms at issue here. *Id.* at \*2–3.

While the court noted "that some courts [had] found physical loss even without tangible destruction," "the line of cases requiring tangible injury to property [was] more persuasive." *Id.* at \*5. Accordingly, the court dismissed the complaint, holding that the plaintiff failed to state an "accidental direct physical loss to Covered Property." *Id.* at \*7. Similarly, the Ingham County Circuit Court recently adopted the tangible damage interpretation to dismiss a COVID-19-related insurance case. *See Gavrilides Management Co. LLC v. Michigan Insurance Co.*, Case No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham Cty.). The *Gavrilides* plaintiff claimed that it suffered "direct physical loss" to its restaurant because the Order prevented customers from dining-in. ECF No. 12-5 at PageID.263. The court dismissed the argument as "simply nonsense" and agreed with the insurer-defendant that the phrase "accidental direct loss of or damage to property" required "some physical alteration to or physical damage or tangible damage to the integrity of the building." *Id.* at 272 (relying in part on *Universal Image Prods., Inc. v. Chubb Corp.*, 703 F. Supp. 2d 705, 708 (E.D. Mich. 2010), *aff'd sub nom. Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569 (6th Cir. 2012)).

Plaintiff's reliance on *Studio 417, Inc. v. Cincinnati Insurance Co.*, No. 20-cv-03127-SRB (W.D. Mo. Aug. 12, 2020), is unpersuasive. In *Studio*, the plaintiffs alleged business interruption losses from COVID-19-related "shutdown" orders that their insurer refused to compensate. ECF No. 16-2 at PageID.323. The defendant moved to dismiss, but the court denied the motion, finding that the plaintiffs had plausibly stated losses within coverage. *Id.* at PageID.326–32. Despite apparent similarities, *Studio* is readily distinguishable from the instant case. The policy at issue in *Studio* covered losses arising from "accidental physical loss *or* accidental physical damage to

- 13 -

property." *Id.* at PageID.328 (emphasis original). According to the court, the defendant's insistence on a showing of tangible damage "conflat[ed] 'loss' and 'damage'" and was inconsistent with "giv[ing] meaning to both terms." *Id.* Furthermore, the *Studio* plaintiffs "plausibly alleged that COVID-19 particles attached to and damaged their property," a fact which the court used to distinguish *Source Foods*. *Id.* at PageID.330–31. By contrast, Plaintiff asserts that COVID-19 never entered its premises, and Defendants' interpretation would not read "direct physical loss" redundantly. Even if *Studio* supports Plaintiff's interpretation, its analysis is inapplicable here.

Plaintiff also argues that it has, in fact, stated "tangible damage" because it "alleged tangible deterioration during the several months that [its] operation has been 'suspended.'" ECF No. 16 at PageID.304 n. 11. In support, Plaintiff points to paragraph 35 of the complaint, which states, "Among the property so damaged is Plaintiff's chiropractic equipment, certain leased equipment, *medication and supplements with expiration dates, and other depreciating assets.*" ECF No. 1 at PageID.13 (emphasis added). Plaintiff is simply adding an extra step to its original theory. Rather than the loss of use being the "direct physical loss," the "direct physical loss" is now the passive depreciation *caused by* the loss of use. Plaintiff offers no authority to support the theory that passive depreciation counts as a "direct physical loss to Covered Property," and such a conclusory allegation fails to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

Based on the foregoing, "accidental direct physical loss to Covered Property" is an unambiguous term that plainly requires Plaintiff to demonstrate some tangible damage to Covered Property. Because Plaintiff has failed to state such damage, the complaint does not allege a Covered Cause of Loss.[11] Counts II, IV, and VI will therefore be dismissed.

---

[11] Plaintiff argues that even if it fails to state a claim, the complaint should survive because discovery is likely to show "that a substantial percentage of State Farm policies do not have a virus exclusion, that certain policyholders

**B.**

**1.**

Even if Plaintiff's business interruption losses were caused by an "accidental direct physical loss to Covered Property," coverage would still be negated by Section I – Exclusions. As discussed above, Section I – Exclusions, which is incorporated against all Endorsement coverage, provides several pertinent exclusions, most principally the Virus Exclusion. ECF No. 12-4 at PageID.173–74. Defendants bear the burden of showing that any exclusion to coverage applies. *Heniser*, 534 N.W.2d at 505 n. 6.

By its plain terms, the Virus Exclusion bars coverage for any loss that would not have occurred but for some "[v]irus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness, or disease." ECF No. 12-4 at PageID.173–74. Plaintiff advances two arguments for why the Virus Exclusion is inapplicable: (1) that COVID-19 was not the proximate cause of its losses; and (2) that the Virus Exclusion is limited to costs incurred as a result of viral, bacterial, or fungal contamination. ECF No. 16 at PageID.298–300. Neither argument is compelling.

Plaintiff's contention that the Order was the "sole, direct, and only proximate cause" of Plaintiff's losses is refuted by the Order itself. ECF No. 1 at PageID.3. The Order expressly states that it was issued to "suppress the spread of COVID-19" and accompanying public health risks. ECF No. 16-4 at PageID.424. The only reasonable conclusion is that the Order—and, by extension, Plaintiff's business interruption losses—would not have occurred but for COVID-19. Plaintiff is

---

subject to the Order had reported direct Covid-19 contamination and were denied coverage anyways, or that certain class policyholders subject to the Order also sustained other, yet unknown types of property damage." ECF No. 16 at PageID.306-07. Plaintiff seems to state the rule backwards. A Rule 12(b)(6) motion ensures that "*before* proceeding to discovery, a complaint [alleges] facts suggestive of illegal conduct." *Twombly*, 550 U.S. at 563 n. 8 (emphasis added). Other putative class members are free to bring their own action against Defendants.

therefore wrong to suggest that "whether the reason for the [Order] was preventing the spread of a virus or an asteroid spreading magic dust is irrelevant." ECF No. 16 at PageID.299. If it were the latter, the Virus Exclusion would not apply.

Furthermore, Plaintiff's position essentially disregards the Anti-Concurrent Causation Clause, which extends the Virus Exclusion to all losses where a virus is part of the causal chain. ECF No. 12-4 at PageID.173–74. Thus, even if the Order were a more proximate cause than COVID-19, coverage would still be excluded. Plaintiff, however, rejects this interpretation, arguing that it would lead to absurd results. To illustrate, Plaintiff poses a hypothetical where coverage is excluded because a firefighter passes out from viral infection on the way to put out a small fire at Plaintiff's business which is later burned to the ground. ECF No. 16 at PageID.299. Ignoring the merits of Plaintiff's hypothetical, the task here is not to speculate on the outer limits of coverage, and Plaintiff provides no authority for discounting the plain meaning of a term because such meaning might produce counterintuitive results.[12] *See Diesel Barbershop*, 2020 WL 4724305 at *6 ("[W]hile the Virus Exclusion could have been even more specifically worded, that alone does not make the exclusion 'ambiguous.'").

Plaintiff next argues that the Virus Exclusion is inapplicable because it was only meant to exclude losses related to viral, bacterial, or fungal contamination. Plaintiff points to the 2006 ISO circular which allegedly shows that "the [Virus Exclusion] was meant to preclude coverage for 'recovery for losses involving contamination by disease-causing agents,' and that the exclusion related only 'to contamination by disease-causing viruses.'"[13]  ECF No. 16 at PageID.300. The

---

[12] Plaintiff's insistence that the Virus Exclusion be strictly construed against Defendants is similarly ineffective. While "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured," "[c]lear and specific exclusions must be given effect." *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992). "It is impossible to hold an insurance company liable for a risk it did not assume." *Id.*

[13] Plaintiff alleges that because Defendants misrepresented the nature of the Virus Exclusion to insurance regulators, the exclusion is void as against public policy. ECF No. 1 at PageID.5. Defendants contend that the misrepresentation allegations are contradicted by the ISO circular, which provides, in conspicuous formatting, "This filing introduces

parties dispute the meaning of the ISO circular, but its exact meaning is immaterial. By its terms, the Policy does not limit the Virus Exclusion to contamination, and Plaintiff has failed to show that the Virus Exclusion is ambiguous. *C.f. Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 28 F. Supp. 2d 440, 445 (E.D. Mich. 1998) (finding pollution exclusion clause ambiguous and interpreting it along with ISO clause). Accordingly, the ISO circular is extrinsic evidence that may not be "used as an aid in the construction of the [unambiguous] contract." *City of Grosse Pointe Park v. Michigan Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 115 (Mich. 2005). Therefore, even if Defendants misrepresented the purpose and extent of the Virus Exclusion in 2006, the plain, unambiguous meaning of the Virus Exclusion today negates coverage.[14] *See Mahnick v. Bell Co.*, 662 N.W.2d 830, 832–33 (2003) ("The court must look for the intent of the parties in the words used in the contract itself. When contract language is clear, unambiguous, and has a definite meaning, courts do not have the ability to write a different contract for the parties . . . .") (internal citations omitted).

Accordingly, assuming Plaintiff has suffered an "accidental direct physical loss to Covered Property," the Virus Exclusion negates any coverage for Plaintiff's loss of income or extra expense. For this reason, Plaintiff's request for leave to amend its complaint upon a finding that it has not suffered an "accidental direct physical loss to Covered Property" will be denied because granting such leave would be futile. ECF No. 16 at PageID.307. Counts II, IV, and VI will be dismissed.[15]

---

[the Virus Exclusion,] which states that there is no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." ECF No. 1 at PageID.88. Accepting Plaintiff's allegations as true, Plaintiff has not offered any authority for voiding the exclusion, nor has it alleged that it was fraudulently induced into entering the Policy. *See* ECF No. 1.

[14] Plaintiff also alleges that Defendants and other insurers are summarily denying claims for bad faith financial reasons. ECF No. 1 at PageID.19–20. Such allegations do not alter the plain meaning of the Policy, and Plaintiff has not since elaborated on these allegations.

[15] Accordingly, Defendant's argument that imposing liability despite the Virus Exclusion would be unconstitutional is not reached. ECF No. 12 at PageID.138.

**2.**

The applicability of the three additional exclusions, the Ordinance or Law, Acts or Decisions, and Consequential Losses exclusions, will not be reached. It is unnecessary to decide whether these exclusions bar coverage when Plaintiff has not stated an "accidental direct physical loss to Covered Property" and the Virus Exclusion would otherwise bar recovery.[16] Similarly, the application of the Loss of Income, Extra Expense, and Civil Authority sections of the Endorsement remain undecided besides the finding that Plaintiff has failed to state a Covered Cause of Loss, which is a prerequisite to the application of each section.

**C.**

In addition to its breach of contract claims, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that "the Policy and other Class members' policies provide coverage for Class members'" business interruption losses incurred by the Order and that the Virus Exclusion is inapplicable. ECF No. 1 at PageID.27–37 (Counts I, III, and V). Defendants argue that such declaratory relief would duplicate Plaintiff's breach of contract claims. Defendants are correct.

Under 28 U.S.C. § 2201(a), a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." To determine whether to exercise declaratory jurisdiction, a court should consider "whether the judgment will serve a useful purpose in clarifying and settling the legal relationships in issue and whether it will terminate and afford relief from the uncertainty, insecurity, and controversy giving

---

[16] In comparison to the other issues, the parties have minimally briefed the application of the additional exclusions. Across the parties' combined 57 pages of briefing (excluding exhibits), the three additional exclusions receive about 7 pages. Most of this space is spent discussing the application of factually remote and nonbinding cases. *See* ECF No. 12 at PageID.149–51; ECF No. 16 at PageID.310–14.

rise to the proceeding." *Aetna Cas. Surety Co. v. Sunshine Corp.*, 74 F.3d 685, 687 (6th Cir. 1996)

(citations and internal quotations omitted).

The Sixth Circuit has outlined five factors assessing the propriety of a federal court's

exercise of discretion in such a situation:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000). These factors reveal no useful

purpose for declaratory jurisdiction here. First, declaratory relief cannot "settle the controversy"

because, as discussed, Plaintiff has failed to state a Covered Cause of Loss. As a result, it seems

implausible that declaratory relief could further clarify the legal relations at issue. Indeed, Plaintiff

merely asserts its right to seek a declaration "that certain policy language means 'X', or that the

virus exclusion does not apply, without also giving up [its] claim for damages." ECF No. 16 at

PageID.315. Plaintiff does not explain how pursuing this right would offer any relief, especially

since Plaintiff has failed to state a claim for breach of contract. *C.f. Dow Chem. Co. v. Reinhard*,

No. 07-12012-BC, 2007 WL 2780545, at *10 (E.D. Mich. Sept. 20, 2007) (dismissing declaratory

relief counts that "would result in the duplication of any disposition of the claim of a breach of

contract" but retaining declaratory relief counts regarding "prospective obligations" "that differ

from any determination of liability" for breach of contract).

The remaining factors are similarly unpersuasive. The factors regarding procedural fencing

and comity between the state and federal courts are neutral at best. Moreover, Plaintiff's alternative

claims for breach of contract would have been more efficient vehicles for relief given that Plaintiff

could have obtained damages along with an opinion regarding the extent of Policy coverage. Ultimately, this opinion dismissing Plaintiff's claims for breach of contract will clarify the parties' rights under the Policy as meaningfully as any declaratory judgment would have. Allowing Plaintiff to continue seeking declaratory relief would be nonsensical. Accordingly, Counts I, III, and V must be dismissed.

### D.

Defendants allege that Defendant State Farm Automobile was not a party to the Policy and should be dismissed. ECF No. 12 at PageID.151. Plaintiff agrees. ECF No. 16 at PageID.292 n. 1. Accordingly, notwithstanding the discussion above, Plaintiff's claims against State Farm Automobile must be dismissed.

### IV.

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 12, is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE**.


Dated: September 3, 2020                          s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge