# EXHIBIT H

1   THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2               FOR THE COUNTY OF MONTEREY

3                                       CERTIFIED COPY
    _____
4   The Inns by the Sea            )
                                   )
5   vs.                            ) CASE NO. 20CV001274
                                   )
6   California Mutual Insurance    )
    Company                        )
7   _____)

8

           REPORTER'S TRANSCRIPT OF PROCEEDINGS
9
              MONDAY, AUGUST 4, 2020
10
       BEFORE THE HONORABLE LYDIA M. VILLARREAL, JUDGE
11

12

13  APPEARANCES:

14  FOR PLAINTIFF:          SAM FERGUSON
    (APPEARING ON COURT CALL)   ATTORNEY AT LAW
15
                            MICHAEL J. REISER
16                          ATTORNEY AT LAW

17

18  FOR DEFENDANT:          RYAN Z. KELLER
    (APPEARING ON COURT CALL)   ATTORNEY AT LAW
19
                            STEVEN HAYES
20                          ATTORNEY AT LAW

21

22

23

24  REPORTED BY:   JAMIE L. SETTERQUIST CSR 13362
                   OFFICIAL COURT REPORTER
25                 MONTEREY COUNTY SUPERIOR COURT

                                                    1

```
 1      MONTEREY, CA; Monday, August 6, 2020; 9:24 A.M.

 2

 3                    P R O C E E D I N G S

 4           THE COURT:  Inns by the Sea versus California

 5      Mutual Insurance Company.

 6           MR. KELLER:  Good morning Your Honor.  Ryan

 7      Keller on the phone for Defendant, California Mutual

 8      Insurance Company.  I also have Steven Hayes from my

 9      office on the phone.

10           THE COURT:  I appreciate you doing it, but

11      it's easier for me if I do it.  Sam Ferguson for Inns by

12      the Sea?

13           MR. FERGUSON:  Good morning.  Sam Ferguson for

14      Inns by the Sea.

15           THE COURT:  Thank you very much.  Steven Hayes

16      for California Mutual?

17           MR. HAYES:  Good morning, your Honor.

18           THE COURT:  And who is going to be speaking on

19      behalf of California Mutual?  Will it be Mr. Hayes or

20      Mr. Keller?

21           MR. KELLER:  Mr. Keller, your Honor.

22           THE COURT:  Thank you very much.  Mr. Keller

23      on behalf of The Inns by the Sea.

24           MR. REISER:  Good morning, your Honor.

25      Michael Reiser.
```

1      THE COURT:  And who will be speaking on behalf

2   of plaintiffs?

3      MR. FERGUSON:  Sam Ferguson of the Meade Law

4   Firm will be speaking on behalf of Inns by the Sea as

5   plaintiffs.

6      THE COURT:  All right.  Thank you so much.  So

7   I have gone over what you filed, and let me just start

8   by saying the economic damage caused by COVID is just

9   heartbreaking, and this case is yet one more of the

10  heartbreak.

11     There are two things that are of concern to

12  me.  It seems to me that the language of the policy

13  supported the defendant's position that it talks about

14  the business suspension must be caused by direct

15  physical loss of or damage to property at the premises,

16  and it seems that the cases for the most part are --

17  seek to address some sort of physical destruction or

18  physical change in usefulness, and I am not sure that

19  COVID creates that physical change.

20     Now, what I think gives me pause is that I am

21  trying to understand the other cases that have been

22  referenced by the plaintiffs, and that is that smoke

23  damage is considered physical damage, persistent E. Coli

24  infestation is physical, gasoline vapors are physical,

25  carbon monoxide saturation is physical, and certainly

```
 1    large quantities of asbestos in the air is considered

 2    physical.

 3            So I am just wondering whether or not COVID is

 4    enough like these other things such that it should be

 5    covered.

 6            So that is sort of my thoughts, and let me

 7    just start with Mr. Ferguson.

 8            MR. FERGUSON:  Thank you, your Honor.  To

 9    directly address your concerns here, I think there is an

10    important way we can view all of the cases you mentioned

11    of smoke damage, E. Coli, gas vapors, carbon monoxide,

12    and one way to view those cases is view the atmosphere

13    in the air within the insured property as part of the

14    physical premises of the property.  I think this is

15    exactly what the *Oregon Shakespeare* case does, which as

16    you mentioned the case of smoke infestation of the

17    *Oregon Shakespeare Festival*, and one way to think about

18    coronavirus, there is actually a contamination of the

19    air within the physical spaces that results in a change

20    on the molecular level of the composition of the air and

21    space.

22            What these cases hold is that when there is a

23    physical change or when there is a physical invasion of

24    a harmful substance that renders a space functionally

25    useless, you have direct physical loss of or damage to
```

3

1      property within insurance coverage.

2              And now, your Honor, I certainly sympathize

3      with your struggle over whether coronavirus is similar

4      enough to smoke, E. Coli, gas vapors, carbon monoxides,

5      and asbestos, but it does seem to me that those concerns

6      raise a factual question of what are the characteristics

7      of coronavirus?  How present was it on this premises?

8      How dangerous was it and what quantities?  Those are all

9      factual questions that can be addressed in discovery.

10             And with respect to the demurrer, the

11     defendants are making a legal point here.  They are

12     saying under no circumstances does our policy -- does

13     our insurance policy provide coverage for the insured in

14     the absence of tangible alteration to the property.

15             Now, I think as we point out in our brief --

16     and I won't belabor the point -- that is not actually

17     consistent with the language of their own policy, and

18     one of the primary interpretative goals in looking at

19     the insurance policy is you need to make sure that every

20     word in that policy makes sense.  You can't reach an

21     interpretation of a policy that renders superfluous

22     language.

23             To point out the obvious, defendant excludes

24     from coverage the mere presence of bacteria.  Now, that

25     exclusion only makes sense if it is against a backdrop

1     of damage that goes beyond tangible alteration of the

2     property.  There would be no reason to exclude the

3     presence of bacteria if the policy only covered tangible

4     alteration to property.

5             So, your Honor, I think that addressed your

6     concern, and I will leave it there for now.  I am happy

7     to speak more at length about other issues, but I will

8     leave it there for right now.

9             THE COURT:  Well, let me ask you another

10    question about that.  When I was struggling with the

11    smoke damage, gasoline vapors, et cetera, the

12    distinction in my mind -- and I don't know if this is

13    one that is valid or not, Mr. Ferguson -- the

14    distinction in my mind is that when California shut

15    down, when the Governor ordered us all to shelter in

16    place and businesses to close, it wasn't necessarily

17    because there was COVID at your hotels.  It was because

18    there was a fear that COVID might arrive at your hotels,

19    and there was a fear by having people move around the

20    state, that that would cause us all to infect each

21    other.

22            So even if we assume that COVID infects the

23    air, which I get your point on that, I think the science

24    supports you on that, but I guess the question I have

25    is, was that the cause?

1          MR. FERGUSON:  So, your Honor, to address your
2     concerns here, I think it is important to understand
3     that there are two independent possible sources of
4     coverage here.  The first is the business interruption
5     insurance coverage, which would be triggered by the
6     physical presence of coronavirus on the insured
7     premises.  That is our property, and that is what we
8     allege is our burden to prove that once we get into
9     discovery.

10         But I think on the allegations, we certainly
11    have met the requirements for the complaint that we have
12    alleged that there was coronavirus on the premises,
13    which caused physical loss of or damage to the premises.

14         The other independent source coverage that we
15    have under this policy is civil authority coverage, and
16    that doesn't require that there even be coronavirus on
17    our property.  It merely requires that there is direct
18    physical loss of or damage to property somewhere else,
19    and that the civil authority take action based on the
20    presence of coronavirus on another property.

21         Now the coronavirus is widespread in both of
22    the county orders.  The San Mateo County order and
23    Monterey County order mentioned there is coronavirus
24    virus within both of the counties.  They mention
25    specific case numbers.  They mention case numbers up in

1    the Bay Area.  It is clear in our mind that the local

        2    county authority and the Governor are responding to the

        3    physical presence of coronavirus in enacting the shelter

        4    in place order.

        5            And to underscore the point, this is about the

        6    physical presence of coronavirus.  I think those orders

        7    are designed to require people to avoid direct, physical

        8    contact with the virus.  That is the key issue here.

        9    150,000 people in this county have died because they

       10    have come into physical contact with the virus.

       11            I think that the virus is certainly physical,

       12    and the orders are in response to the physical presence

       13    of the virus that is at other locations and inside the

       14    insured premises.

       15            THE COURT:  Okay.  So let me make sure I am

       16    understanding you.  So the business income is lost

       17    because of the civil authority shutdown.  Doesn't that

       18    also require a direct physical loss, and don't we still

       19    come back to the same problem of whether or not COVID

       20    causes a physical loss?

       21            MR. FERGUSON:  Yes; that is correct, your

       22    Honor.  To trigger the civil authority coverage, it is

       23    our burden in discovery to show that there was

       24    coronavirus on another property.

       25            And what is interesting about the civil

1    authority coverage in this insurance policy is it is

2    written incredibly broadly.  Typically, in other civil

3    authority provisions, there is actually a proximity

4    requirement.  In our case, there actually is no such

5    proximity requirement.

6             So we believe that there was the physical

7    presence of coronavirus that caused a loss of or damage

8    to property essentially anywhere within two counties.

9    And as a result of that, the civil authority within the

10   county's order to ensure premises to be shut down.

11            So when you look at the claim for civil

12   authority in the context of this case and the context of

13   the policy that is in front of you, we think that we

14   sufficiently allege that there is direct physical loss

15   of or damage to other premises, and if we can carry that

16   burden after the demurrer in discovery, then we win this

17   case.

18            But I think all you have to do right now is

19   ask yourself, can the coronavirus cause direct physical

20   loss of or damage to any property?  And again, we would

21   submit that under the 16 cases we cited, the test is

22   whether there is a presence of a hazardous substance,

23   and whether the quantity of that substance renders the

24   property dangerous to human health and renders the

25   property unusable, we think that there is no tangible

1    alteration to the property required under this policy.

2          So our burden to invoke code civil authority

3    coverage is to show that somewhere within the County of

4    Monterey or the County of San Mateo that there was

5    coronavirus in such concentration that some property was

6    rendered uninhabitable or unusable because of the

7    concentration of coronavirus.  And we certainly think we

8    can meet that burden in discovery, but for now, the

9    Court has to merely analyze whether we alleged enough to

10   meet that bar.

11         THE COURT:  Thank you.  Mr. Keller?

12         MR. KELLER:  Yes, your Honor.  So I think that

13   your analysis is spot-on and exactly how you should be

14   looking at these issues.  So let me first address the

15   issue that gave you pause.

16         So the courts outside of California, as you

17   mentioned, got into issues like asbestos and carbon

18   monoxide, and those are, as you point out, ultimately

19   not just directed at losses.  It also needs to have the

20   business income loss be caused by that direct physical

21   loss.  Like the carbon monoxide situation, it's,

22   Everybody out of the building.  You are going to die

23   from carbon monoxide.

24         The asbestos, there is direct health problems.

25   There is a smell that is related to a lot of those

1    claims that you are referring to.  And so to have

2    everybody out of the building, that causes the business

3    income loss.

4         Here, the Court need not turn a blind eye to

5    the realities of the pandemic and the business situation

6    where the businesses are open while this pandemic is

7    still ongoing, and that's a result of the fact that it

8    is designed to keep people socially distanced and reduce

9    the spread of the pandemic, and that is why the the

10   shelter is in place so they don't prohibit access of

11   civil authority coverage requires to even allow the

12   hotels to keep people there, which they couldn't in the

13   case of a carbon monoxide, asbestos situation.

14        And further, those cases, again, are outside

15   of California.  The direct physical requirement as

16   prefix to the insurance agreement have to be considered

17   under the context for *MRI Healthcare*, and *MRI Healthcare*

18   says that it's excluded and accompanied by demonstrable

19   physical alteration of the property.

20        So I believe that when you follow the analysis

21   of the policy language under the California case in *MRI*

22   *Healthcare*, that it is not a business income loss caused

23   by direct physical damage to property, and the plaintiff

24   has certainly not alleged that.  At most, they've

25   alleged a physical presence on the property of the virus

10

1      and not that that has caused the business income loss,

2      nor can they because as I noted, they could have had

3      people there.  They chose to cease and close down based

4      on the counties' orders, and that was the cause of their

5      loss.

6             THE COURT:  Well, let me just correct you.  I

7      don't think they chose to shut down.  They were ordered

8      to shut down.

9             MR. KELLER:  Yes.  They followed the shelter

10     in place orders, and they -- what I meant by that was

11     there was some level of operations that they could have

12     had under the county order such as maybe economically

13     disadvantaged individuals that they still could have

14     provided shelter to.  To completely shut down was not a

15     complete mandate by the counties.

16            But irrespective of that finer point, there is

17     no direct physical damage to property that caused the

18     business income loss.

19            THE COURT:  Well, Mr. Ferguson, I completely

20     disagree with Mr. Keller that anyone had a choice.  I

21     think we were all trying to follow the orders we were

22     given, but in spite of that issue, having looked at the

23     *MRI* case -- and I certainly agree with your

24     representation that once you get to the facts of the *MRI*

25     and the ramping up, the ramping down and all that, it

1       really is not at all like our case here.

2              However, I do think -- and help me with this,

3       Mr. Ferguson -- I do think the *MRI* case is intended to

4       be the framework by which we analyze these cases, and

5       that case pretty much says that because of the need for

6       a physical damage, that it precludes any claim in which

7       the insured suffered a detrimental economic impact

8       without the distinct, demonstrable physical alteration

9       of the property.  Help me out with that, Mr. Ferguson.

10             MR. FERGUSON:  Yes.  So a couple points on

11      *MRI*, your Honor.  First, the term 'physical, as the *MRI*

12      court understands it is, losses that are intangible or

13      incorporeal.  That is what it is using to distinguish

14      against physical, and I don't think that we alleged an

15      intangible or incorporeal loss here.

16             We allege there are specific, physical

17      microbes within our property that are contaminating the

18      air that are hazardous to human health that are

19      rendering it unusable.  And I think to adopt the

20      definition of direct physical loss of or direct physical

21      damage to property, that it excludes the situation where

22      you have an invasion by a physical force into the

23      atmosphere of your property onto all the surfaces of

24      your property and says that is not direct physical loss

25      of or damage to property, it can't be the case.

1         When an insured purchased insurance, they are

2    expecting that when there is a physical catastrophe that

3    shuts down their operation, the insurance coverage will

4    kick in and cover that, and I think that to the extent

5    that *MRI* case suggests that there has to be tangible

6    alteration in the sense that it is perceptible to the

7    eye or to touch, that is simply dicta in that case.

8    This Court is not required to follow *MRI Healthcare* on

9    that rationale.

10        *MRI Healthcare* actually could have said what

11   we are saying here.  It could have said physical damage

12   actually does include the physical invasion by hazardous

13   substances that renders a property unusable, and the

14   outcome would have been exactly the same in *MRI*

15   *Healthcare*, and I am pointing that out to say that

16   discussion of the meaning of direct physical loss of or

17   damage to property wasn't central.

18        One other point about *MRI Healthcare* is the

19   language of coverage in that case and the relevant

20   policy is actually different.  The language of coverage

21   in that policy, direct physical loss to or damage to

22   property.  In our case, it is direct physical loss

23   of...property, and we think that difference in language

24   is critical as we have suffered a direct physical loss

25   of our property because it's been invaded, contaminated,

1     polluted by the hazardous substance that renders it

2     unfit for human use, and the government saw the same

3     hazard was present and ordered us to shut down our

4     operations as a consequence of that.

5          And, your Honor, I think you previously had

6     characterized the shutdown orders as requiring people to

7     distance.  And while that is part of the orders, they

8     actually do go further than that, and this is critical.

9     This is paragraph three of the Monterey order:  All

10    businesses within the facility in the county except

11    essential businesses are required to cease all activity

12    at facilities located within the county.  That is a

13    direct shutdown and a closure of our business that

14    prohibits access to the business, which we think is

15    enough to trigger the civil authority coverage.

16         Mr. Keller has made the point that there were

17    very specific uses that we could have made about

18    properties under these orders.  We could have sheltered

19    homeless people and possibly allowed a limited number of

20    individuals to use the hotel as a residence.

21         What he is trying to do is read into the civil

22    authority provision in our policy of requiring that

23    there be a total prohibition of access to the insured

24    premises.  Well, that word 'total' doesn't actually

25    appear in our insurance policy.  All it says is the

1     government prohibits access to your premises and has

2     done so as a consequence of a direct physical loss of or

3     damage to the properties elsewhere, then insurance

4     coverage kicks in.

5           I hope that addresses your concerns about *MRI*,

6     your Honor.

7           THE COURT:  It is helpful.  Thank you.

8     Mr. Keller, anything you would like to close with?

9           MR. KELLER:  Yes, your Honor.  So at the end

10    of the day, the virus, whether it is present on the

11    property or not, does not cause the business income

12    loss, which it is required to under the policy, and it

13    is not a direct physical loss as -- not a direct

14    physical damage to property as described by *MRI*

15    *Healthcare*.

16          And at the end of the day, they cannot allege

17    that there was a direct physical damage to property that

18    was, in fact, the cause of their business income loss.

19    Thank you.

20          THE COURT:  Any last words, Mr. Ferguson?

21          MR. FERGUSON:  Yes, your Honor.  Thank you.

22    One last word is, I would urge the Court to reread *Ward*,

23    which is the other case that California Mutual cites

24    with the idea that you need a tangible alteration.

25          But what is critical in the *Ward* case is that

1    you have to analyze the scope of coverage within the

2    context of the claims that are asserted.  And so, you

3    know, language that might appear unambiguous in the

4    context of one particular claim might eventually appear

5    ambiguous in the context of another claim.

6         So the two cases the defendant cites, *Ward* and

7    *MRI*, are in such different factual circumstances of

8    their own that I think, given the claims that we are

9    asserting, the scope of the coverage within the policy

10   has to be viewed within the lens of the claims that we

11   are asserting.

12        And given the claims that we are asserting, I

13   think that the insurance policy is, at a minimum,

14   subject to two reasonable constructions.  One is that as

15   the defendants assert that there has to be physical

16   alteration to the property.  The other is the

17   construction.

18        We think this is a reasonable interpretation,

19   and given the Court's struggle with how to resolve this

20   case, we think it's clear that reasonable minds can

21   differ on this.  If that is the case, the tie goes to

22   the plaintiff as ambiguities are construed in favor of

23   the insured.

24        And, your Honor, one last point.  California

25   Mutual actually has a virus exclusion that they include

1     in other policies.  We raised this in the complaint.  In

2     fact, in their reply, they cite the *Michigan* case where

3     the insurance policy issue in that case also had a virus

4     exclusion.  This is a well-known exclusion that is

5     included in many, many, many policies throughout the

6     country, and many of the cases in the wave of COVID

7     litigation in the last few months are going to be

8     decided on that virus exclusion angle.

9          Our client has dutifully paid almost $40,000 a

10    a year in insurance premiums to California Mutual under

11    a policy that does not have a virus exclusion.  This is

12    critical, your Honor.  The fact that California Mutual

13    and the insurance industry at large has a virus

14    exclusion very strongly suggests to us that they believe

15    a virus -- the presence of a virus can cause direct

16    physical loss of or damage to property.  That was not

17    included in this policy.

18         California Mutual very easily could have

19    tacked on the word 'virus' using a comma after the word

20    'bacteria' in the bacteria exclusion.  They could have

21    included the presence of virus from the insurance

22    policy, and they failed to do so.

23         So California Mutual having failed to define

24    the central term in this case, direct physical loss of

25    or damage to property, and having failed to include a

virus exclusion, we think the Court should adopt the
plaintiff's very reasonable construction of this
insurance policy and find that our allegation that there
is physical presence of coronavirus and hazardous
concentration on our property is sufficient to trigger
business income interruption insurance coverage, as well
as the fact that there is coronavirus-inhabited
concentration on other properties triggered the
government to close our facilities.

Or in the alternative, we are also entitled to
civil authority coverage. And I think with that, your
Honor, we would submit.

THE COURT: All right. The Court is going to
take this under submission. It seems to me that if the
Court decides to sustain the demurrer, that the motion
to strike is moot, so I don't want to hear argument on
that.

Anyway, I just want to spend more time
thinking about it, and I appreciate your thoughtful
argument. If for any reason I decide that I need
additional argument, I will let you know, but otherwise,
I hopefully will be able to let you know very soon.
Thank you.

MR. FERGUSON: Thank you, your Honor.

MR. KELLER: Thank you, your Honor.

```
 1              MR. FERGUSON:  Should there be any additional
 2    briefing or legal issues you should like us to address,
 3    we would be happy to do so.
 4              THE COURT:  This is Mr. Ferguson talking?
 5              MR. FERGUSON:  I am sorry.  Mr. Ferguson, yes,
 6    your Honor.
 7              THE COURT:  Thank you very much.
 8              (Whereupon, the proceedings adjourned at 9:55
 9              a.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1       STATE OF CALIFORNIA      )

2                                ) SS.

3       COUNTY OF MONTEREY       )

4

5               I, Jamie L. Setterquist, an official reporter

6       for the Superior Court of the State of California, in

7       and for the County of Monterey, do hereby certify:

8               That, as such reporter, I reported

9       stenographically the above proceedings on Monday, August

10      4, 2020, and that the above and foregoing transcript,

11      consisting of pages numbered from 1 to 19, inclusive,

12      contain a true and correct transcript of all of said

13      proceedings.

14

15              Dated at Salinas, California, this August 7,

16      2020.

17

18

19      J          RQUIST  CSR 13362
20                 OFFICIAL COURT REPORTER

21

22

23

24

25
```

1  STEPHEN M. HAYES (SBN 83583)
   RYAN Z. KELLER (SBN 249193)
2  HAYES SCOTT BONINO & ELLINGSON
   GUSLANI SIMONSON & CLAUSE, LLP
3  999 Skyway Road, Suite 310
   San Carlos, California 94070
4  Telephone: (650) 637-9100
   Facsimile: (650) 637-8071
5
6  Attorneys for Defendant,
   CALIFORNIA MUTUAL INSURANCE COMPANY
7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                  IN AND FOR THE COUNTY OF MONTEREY
10 THE INNS BY THE SEA, a California        CASE NO. 20CV001274
   Corporation,
11
           Plaintiff,
12                                          **[PROPOSED] ORDER GRANTING
   v.                                       DEFENDANT CALIFORNIA MUTUAL
13                                          INSURANCE COMPANY'S DEMURRER
   CALIFORNIA MUTUAL INSURANCE              TO PLAINTIFF'S COMPLAINT**
14 COMPANY, a California Corporation, and
   DOES 1 through 25, Inclusive,            **MATTER DEEMED COMPLEX, and
15                                          assigned for All Purposes to Judge Lydia M.
           Defendants.                      Villareal**
16
                                            **Hearing Date:    August 4, 2020**
17                                          **Time:            8:30 a.m.**
                                            **Dept.:           13**
18
                                            **Action Filed:    April 20, 2020**
19                                          **Trial:           None Set**
20
21
22
23
24
25
26
27
28

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 8/06/2020
By Deputy: Cummings, Lorielle

1138634
[PROPOSED] ORDER GRANTING DEFENDANT CALIFORIA MUTUAL INSURANCE COMPANY'S
DEMURRER TO PLAINTIFF'S COMPLAINT – Monterey County Action No.: 20CV001274

1        Defendant CALIFORNIA MUTUAL INSURANCE COMPANY's ("California Mutual")

2 Demurrer to the Complaint filed by Plaintiff The Inns by the Sea ("Plaintiff") came before the

3 Honorable Lydia M. Villarreal in Department 13 on <u>August 4</u>, 2020. The Court, having

4 reviewed the papers filed in support of and in opposition to, and good cause appearing therefor, the

5 Court hereby makes the following orders:

6       1.     IT IS HEREBY ORDERED that the California Mutual's Demurrer to Plaintiff's

7 <u>entire Complaint</u> is sustained without leave to amend on the grounds that the allegations fail to state

8 facts sufficient to constitute a cause of action.

9

10      **IT IS SO ORDERED**.

11 Dated:  **August 6, 2020**   , 2020         _____

                                      Judge Lydia M. Villarreal

12                                       Judge of the Superior Court of Monterey

13

[PROPOSED] ORDER GRANTING DEFENDANT CALIFORIA MUTUAL INSURANCE COMPANY'S
DEMURRER TO PLAINTIFF'S COMPLAINT – Monterey County Action No.: 20CV001274

**CASE NAME:** The Inns by the Sea v. California Mutual Insurance Company, et al.
**CASE NO.:** Monterey County Action No.: 20CV001274

## PROOF OF SERVICE

I am a resident of the State of California. My business address is 999 Skyway Road, Suite 310, San Carlos 94070. I am employed in the County of San Mateo where this service occurs. I am over the age of 18 years, and not a party to the within cause. I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

On the date set forth below, following ordinary business practice, I served a true copy of the foregoing document(s) described as:

**[PROPOSED] ORDER GRANTING DEFENDANT CALIFORNIA MUTUAL INSURANCE COMPANY'S DEMURRER TO PLAINTIFF'S COMPLAINT**

☒ (BY EMAIL) [WITH PRIOR APPROVAL] by transmitting via email the document(s) listed above to the corresponding email address(es), or as stated on the attached service list, on this date before 5:00 p.m.

| | |
|---|---|
| Tyler Roberts Meade | Michael Joseph Reiser, Esq. |
| The Meade Firm, P.C. | Reiser Law |
| 12 Funston Avenue, Suite A | 1475 N Broadway, Suite 300 |
| San Francisco, California 94129 | Walnut Creek, California 94596-4643 |
| Telephone: 415.724.9600 | Telephone: 925.256.0400 |
| Facsimile: Not Available | Facsimile: 925.476.0304 |
| Email: tyler@meadefirm.com | Email: michael@reiserlaw.com |
| cc Email: sam@meadefirm.com; and | cc Email: michaeljr@reiserlaw.com; |
| seena@meadefirm.com; | matthew@reiserlaw.com; |
| | isabella@reiserlaw.com; and |
| *Attorneys for Plaintiff The Inns by the Sea* | debbie@reiserlaw.com |
| | |
| | *Attorneys for Plaintiff The Inns by the Sea* |

☒ *(State)* I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 18, 2020 at San Carlos, California.

_____
Dolores A Mayorga