# EXHIBIT 1

UNITED STATES DISTRICT COURT FOR
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEWCHOPS RESTAURANT COMCAST LLC, doing business as Chops<br><br>Plaintiff,<br><br>vs.<br><br>ADMIRAL INDEMNITY COMPANY<br><br>Defendant. | JURY TRIAL DEMANDED<br><br>No. 2:20-CV-01949-TJS |

DECLARATION OF RICHARD M. GOLOMB, ESQUIRE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT
ADMIRAL INDEMNITY COMPANY'S MOTION TO DISMISS
<u>THE FIRST AMENDED COMPLAINT</u>

Pursuant to 28 U.S.C. §1746, the undersigned, **RICHARD M. GOLOMB, ESQUIRE**, hereby makes the following declaration:

1. I am an attorney admitted to practice before the bar of the United States District Courts for the Eastern District of Pennsylvania, the Supreme Court of the Commonwealth of Pennsylvania and other courts in the United States.

2. I am a partner in Golomb & Honik, PC and, along with co-counsel, represent the Plaintiff in this matter.

3. I hereby submit this Declaration in Support of the Plaintiff's Opposition to Defendant Admiral Indemnity Company's Motion to Dismiss the First Amended Complaint.

4. The purpose of this Declaration is to inform the Court that, contrary to the tone of Defendant's Motion to Dismiss, the factual issues presented in the motion are much more nuanced and complicated. Because there has been no discovery in this case, a decision on the Motion

1

should at least be deferred until a later date when consideration of the merits of the case can be determined on a fulsome record.

5. While I am not declaring that the instant Motion is categorically equivalent to a Rule 56 Motion for Summary Judgment, as noted in Plaintiff's Memorandum of Law opposing the Motion, the issues presented are not capable of determination in the abstract, because insurance policies inherently have ambiguities, require interpretations, are contracts of adhesion and involve a need for information from outside sources to assist in an understanding of policy language and impact.

6. There is no record involving these issues for the Court to consider at this time. Therefore, as a matter of caution in the protection of the rights of my client, I submit herewith exhibits to further elaborate on how the facts and information needed will be developed through proper discovery before any decision can be made as to whether this case properly states a cause of action to withstand the Motion to Dismiss.

7. As the Court undoubtedly is aware, a Petition is pending before the Judicial Panel for Multidistrict Litigation to determine whether to create an MDL docket and appoint a transferee judge to coordinate consolidated proceedings involving business interruption insurance cases. *See In Re: Covid-19 Business Interruption Protection Insurance Litigation*, MDL No. 2942 (2020). As of the date of the preparation of this Declaration, the MDL docket shows in excess of 250 cases potentially being centralized and transferred to a transferee Court. Defendant here, Admiral Indemnity Company, is but one of numerous insurance carriers being sued for failing to provide business interruption coverage to policy holders.

8. The policies that the various carriers have issues contain similar but not necessarily identical language. Much of the language, however, has been developed with the assistance of the

Insurance Services Office (hereinafter, "ISO"). Upon information and belief, precisely what the language in specific provisions inserted in a policy means requires information from the ISO. In addition, policy holders will seek to learn what were carriers and regulators' understanding of these clauses when drafted and the impact inserting such clauses had on premiums charged. Indeed, in two other cases pending in this Eastern District of Pennsylvania Court, the plaintiffs have served third party discovery through a subpoena for the production of documents on ISO to elicit information that will be useful for the interpretation of policy provisions. I attach as Exhibit 1 and 2 respectively, the third-party ISO discovery in the cases of *Cadence* and *Bokman* to exemplify this point.[1] The discovery seeks information about the development of language in policies, communications with insurance commissioners of states and the interaction between carriers and about policy language. All of this information is relevant to Plaintiff's rights under the Policy in question, thereby precluding a dismissal as a matter of law.

9. In the proceedings before the Panel, the initial movants for the creation of the MDL were Plaintiff and LH Dining, another plaintiff with a case pending before this Court and also one where Admiralty Indemnity Company is the Defendant and moved for dismissal.[2] As filings occurred before the Panel, one of the interested parties filed support for the creation of an MDL docket that included a Declaration submitted by Professor Tom Baker, a University of Pennsylvania Law School and Wharton professor. *See,* Declaration of Professor Tom Baker, June

---

[1] I am a co-counsel in each of these cases, and because the Defendants Answered the Complaints in those cases, that afforded me an opportunity to commence discovery, including discovery of documents from the ISO. Here, the knee jerk filing of the Motion to Dismiss by Admiral is an attempt to deprive my client of its right to take discovery that is necessary before the Court were to consider dismissing this case as having no merit.

[2] Admiral's Motion to Dismiss the LH Dining Case is virtually identical to the Motion filed here against Plaintiff and is being opposed as well for similar reasons expressed by Plaintiff here. *See, LH Dining L.L.C. v. Admiral Ins. Co.,* No. 2:20-cv-01869.

15, 2020, filed in MDL 2942 at D.E. # 544-1, attached hereto as Exhibit 3. The significance of Professor Baker's Declaration to this instant motion is his discussion about insurance carriers using various standardize forms, the development of such forms with the ISO, the discussion of proceedings in other countries for a mechanism to address business interruption claims against insurance carriers, as well as other matters discussed in his Declaration. *Id.*

10. I also want to make of record in this case the fact that the insurance industry has actively sought, through Congress, a national and uniform approach to resolving the business interruption insurance claims. In the face of the potential payout of massive amounts of losses in coverage disputes, the insurance industry has put forth at least one proposed legislative response that would essentially provide a reinsurance program for business interruption losses caused by a pandemic – the Pandemic Risk Insurance Act of 2020 (H.R. 7011) – as well as a proposal called the Business Continuity Protection Program (BCPP) that seeks to serve the same purpose without acknowledging that a pandemic is an insurable risk. *See* Steve Evans, *PRIA bill introduced with Pandemic Risk Reinsurance Program*, https://www.artemis.bm/news/pria-billintroduced-with-pandemic-risk-reinsurance-program (last visited July 15, 2020).

11. Similarly, Lloyd's has proposed a "Black Swan" reinsurance program that would cover pandemic losses.[3] *See* Carolyn Cohn and Alexander Smith, Lloyd's calls for state-backed 'Black Swan' reinsurance, https://www.msn.com/en-us/finance/markets/lloyds-calls-for-state-backed-black-swan-reinsurance/ar-BB16b2p3 (last visited July 15, 2020). While those efforts focus on future pandemics, one proposed bill – the Business Interruption Relief Act of 2020 (H.R. 7412) – sought to create a voluntary program that would reimburse insurers who voluntarily paid

---

[3] It is Lloyd's that is characterizing the pandemic as a black swan. A "black swan" in this context is intended to describe an event that comes as a surprise, has a major effect, and is often rationalized after the fact with the benefit of hindsight.

4

out business interruption claims. *See Bill allows interruption insurance claims to be honored during COVID-19 shutdowns*, https://www.timesheraldonline.com/2020/06/30/bill-allows-interruptioninsuranceclaims-to-be-honored-during-covid-19-shutdowns/ (last visited July 15, 2020).

12. These efforts illustrate that legislators and even the insurance industry itself recognize the crisis that COVID-19 has caused, the vulnerability of the insurance industry and the need for a resolution that is fair to the insureds.

13. I also want to make part of the record information about proceedings ongoing in the United Kingdom. COVID-19 obviously is a worldwide problem, and the UK's response to the same business interruption insurance issues raised here is instructive. The Financial Conduct Authority (the "FCA"), the insurance regulator of the United Kingdom, has filed a single action against a number of insurance companies under the United Kingdom's Financial Market Test Case Scheme concerning business interruption insurance coverage for COVID-19-related losses that will provide guidance to resolving the claims of hundreds of thousands of different small and medium-sized business enterprises. The FCA's action is proceeding apace, with its scheduled eight-day trial having begun on July 20, only six weeks after the commencement of the action. *See* https://www.fca.org.uk/publication/corporate/bi-insurance-test-case-trial-timetable.pdf (last visited July 22, 2020). The results of this litigation may well impact 370,000 policyholders, hundreds of standard-form insurance policies, and dozens of insurers. *See* https://www.fca.org.uk/publication/corporate/bi-insurance-test-case-list-affected-nsurerspolicies-15-july.pdf (last visited July 22, 2020). The FCA action makes clear that actions based on business loss insurance policies warrant consideration of the issues on the merits, and not summary dismissals without the development of a proper record.

14. In addition, to address fact questions raised by Defendant in its Motion, I state that expert discovery may be necessary on such matters as: the science of the Coronavirus, sanitation issues, persistence of the Coronavirus in the atmosphere and within properties and adjacent properties, as well as expert opinion about impact of the Coronavirus on property and the meaning of the Civil Authority Orders among other issues. Defendant's attempt to gloss over these factual issues and need for expert evidence should not be countenanced.

On behalf of Plaintiff, I respectfully request the Court consider Defendant's Motion to Dismiss as premature and that it should be denied without prejudice. There are numerous issues of fact to be ascertained as described herein and in Plaintiff's opposition brief. The matter at hand is not one that is capable of being resolved as a simple matter of law. Facts and a record must be ascertained. Thus, while Defendant has not couched its Motion as a Rule 56 Motion, its nature is more akin to a Rule 56 motion and discovery should be permitted.

PURSUANT TO 28 U.S.C. §1746 I DECLARE UNDER PENALTY OF PERJURY ON THIS 27th DAY OF JULY 2020, THAT THE FOREGOING IS TRUE AND CORRECT.

_____
**RICHARD M. GOLOMB, ESQUIRE**