# EXHIBIT 3

# REPORTERS/TRANSCRIBERS TRANSCRIPT TRANSMITTAL

**INSTRUCTIONS:** Forward original to the requesting party with completed original transcript.
Send copies to:
1) Supervisor of Court Reporters with copy of Transcript
2) Administration Office of the Courts, Attn: Chief, Reporting Svs., CN-988, Trenton, NJ 08625
3) Attorneys and/or Pro Se (if known)
4) Other _____

Sent("x")

**TO:** REQUESTOR'S NAME/ADDRESS

Eric Harrison  3 Ethel Road Suite 300 Eidson, NJ 08818

| CASE NAME (Plaintiffs) | v | (Defendants) | |
|---|---|---|---|
| Optical Services, USA, et al Insurance Co | | Franklin Mutual | ___ Appeal ___ Non-Appeal |

| LOWER COURT DOCKET TYPE | LOWER COURT NUMBER | Transcript Request Date: |
|---|---|---|
| ___ Indictment ___ Accusation ___ Complaint | 3681-20 | 8/13/2020 |

| DOCKET NUMBER | COUNTY | COURT | Transcript Request Receipt Date |
|---|---|---|---|
| A- | Bergen County | Michael Beukas | 8/13/2020 |

## TRANSCRIPTS FILED HEREWITH

| – | DATES | NO. OF COPIES | TOTAL PGS. PER TRANSCRIPT | PROCEEDING TYPE |
|---|---|---|---|---|
| 1 | 8/13/2020 | 0 | 30 | Hearing |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |

*Check, if applicable:

Applicant is responsible for filing copies pursuant to Court Rule 2:6-12(a)(d)   ___ Yes   ___ No

| ___ Reporter | REPORTER/TRANSCRIBER NAMER (Name of Agency, if applicable) | TRANSMITTAL DATE |
|---|---|---|
| xx Transcriber | **Phoenix Transcription, LLC** 796 Macopin Rd. West Milford N.J. 07480 | 8/14/2020 |
| | REPORTER/TRANSCRIBER (Signature) | |

White: REQUESTING PARTY   Blue: CHIEF, REPORTING SERVICES   Green: SUPERVISOR   Canary: OTHER

Pink: MAINTAIN FOR SELF   Gold: ATTORNEY and/or PRO SE

89286 elh

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: CIVIL PART
BERGEN COUNTY
(HEARD VIA ZOOM)
DOCKET NO: BER-L-3681-20
A.D. #_____

OPTICAL SERVICES USA/        )
JC1, OPTICAL SERVICES        )
USA, LLC, OPTICAL            )           TRANSCRIPT
SERVICES USA-WO, RE & LE     )
HOLDINGS, LLC, STONG OD      )              OF
EWING NJ, LLC,               )
                             )            MOTION
            Plaintiffs,      )
                             )
      vs.                    )
                             )
FRANKLIN MUTUAL              )
INSURANCE COMPANY,           )
                             )
            Defendant.       )

                  Place: Bergen County Justice Center
                         10 Main Street
                         Hackensack, New Jersey 07601

                  Date: August 13, 2020

BEFORE:

    HONORABLE MICHAEL N. BEUKAS, J.S.C.

TRANSCRIPT ORDERED BY:

    ERIC L. HARRISON, ESQ. (Methfessel & Werbel)

APPEARANCES:

    SEAN E. ROSE, ESQ. (Olender Feldman, LLP)
    Attorney for Plaintiffs

    ERIC L. HARRISON, ESQ. (Methfessel & Werbel)
    Attorney for Defendant

                  Transcriber: Laura Scicutella
                  Phoenix Transcription, LLC
                  796 Macopin Rd.
                  West Milford, NJ   07480
                  (862)248-0670

                  Audio Recorded
                  Recording Opr: Alexa D'Angelo

## I N D E X

|                              | PAGE     |
|------------------------------|----------|
| Colloquy re: Housekeeping    | 3,7,30   |
| ARGUMENTS:                   |          |
| BY: Mr. Harrison             | 5,7,15   |
| BY: Mr. Rose                 | 13       |
| THE COURT:                   |          |
| Decision                     | 18       |

| | |
|---|---|
| 1 | (Proceeding commenced at 9:30:49 a.m.) |
| 2 | THE COURT:  Superior Court of the State of |
| 3 | New Jersey, Bergen County Vicinage, clerk recording, |
| 4 | Alexa D'Angelo law clerk, docket number BER-L-3681-20, |
| 5 | caption is <u>Optical Services USA/JCI (sic), Optical</u> |
| 6 | <u>Services USA, LLC, Optical Services USA-WO, and Re and</u> |
| 7 | <u>Le Holdings, LLC, Stong OD Ewing NJ, LLC versus</u> |
| 8 | <u>Franklin Mutual Insurance Company</u>.  Judge Michael N. |
| 9 | Beukas, chambers 453.  The time is approximately 9:32 |
| 10 | a.m.  May I have the appearances of counsel for the |
| 11 | record, please, starting with the plaintiff? |
| 12 | MR. ROSE:  Good morning, Your Honor.  Sean |
| 13 | Rose from the law firm of Olender Feldman on behalf of |
| 14 | plaintiff, Optical Services USA/JC1, Optical Services |
| 15 | USA, LLC, Optical Services USA-WO, Re and Le Holdings, |
| 16 | LLC, and Stong OD Ewing NJ, LLC, collectively |
| 17 | plaintiffs, Your Honor. |
| 18 | THE COURT:  Good morning, Counsel. |
| 19 | MR. ROSE:  Good morning. |
| 20 | MR. HARRISON:  Good morning, Judge.  Eric |
| 21 | Harrison, Methfessel and Werbel, on behalf of Franklin |
| 22 | Mutual Insurance Company. |
| 23 | THE COURT:  Good morning, Counsel.  Okay, |
| 24 | gentlemen, just a -- a couple of -- |
| 25 | RECORDING:  (Indiscernible) -- |

1          THE COURT:   -- reminders before we --

2          RECORDING:   -- is now in the conference.

3          MR. HARRISON:  Your Honor, this is Eric

4     Harrison speaking.  As a courtesy, I should let the

5     Court know I do have a few folks dialing in.  They've

6     all been instructed to keep their phones on mute.

7     Various FMI representatives and a colleague of mine

8     will be listening in but will not be participating.

9          THE COURT:  Okay, very good.

10         For purposes of our established record here

11    today, gentlemen, when you do speak at oral argument, I

12    do need you to identify yourself in between oral

13    arguments so that the transcription service can clearly

14    identify which attorney is speaking.

15         When you are referencing an oral argument to

16    any specific controlling case, I need you to identify

17    that case for the record and pursuant to Rule 1:36-3, I

18    need you to identify for the record whether that is a

19    published opinion in the State of New Jersey versus an

20    unpublished opinion and whether or not you are citing

21    to any law of any other jurisdiction including the US

22    Supreme Court so that I can identify for the record as

23    to whether or not any of the law is controlling in this

24    case for purposes of oral argument.

25         In addition, we are on a Polycom speaker

today and at times it may be difficult for you to hear
me and I may need to interject to pose a question to
either attorney so I may have to elevate my voice so
that you can hear me clearly.  So please don't
misconstrue me elevating my --

RECORDING:  (Indiscernible) --

THE COURT:  -- voice --

RECORDING:  -- is now in the conference.

THE COURT:  Okay, gentlemen, I -- if I need
to elevate my voice, it's for purposes of the Polycom
picking up my voice so that you can hear it, okay.

So I have before me a Motion to Dismiss the
Complaint for failure to state a claim upon which
relief can be granted pursuant to Rule 4:6-2(e) filed
by the defendant, Franklin Mutual Insurance Company.
So, Mr. Harrison, this is your Motion.  You may
proceed.

MR. HARRISON:  Yes, sir.  Thank you, Your
Honor.  We are all aware, I know plaintiffs' counsel is
aware, certainly my firm as an insurance defense firm
is well aware of the fast-moving nature of developments
in insurance litigation and other litigation over
Covid-19.  Two significant events happened yesterday
and they're both worthy of mention.  The first is, and
this is not within the record, but the Court -- it's

1    not important to the Court's decision on the policy

2    language, but it's -- it's significant background.  The

3    multi-district litigation panel of the United States

4    District Court denied a nation-wide Motion to

5    Consolidate these business interruption litigations

6    that are venued in various Federal Courts around the

7    country essentially on the basis that the policy

8    language differs from policy to policy.  Even though a

9    lot of insurers use (indiscernible) income and would

10    other insurers, there is still significant differences

11    between those forms and the facts of particular cases

12    also can determine whether there would be coverage and

13    to what extent.

14           The second significant thing to happen

15    yesterday was the issuance of the decision that Mr.

16    Rose brought to the Court's attention, and I don't have

17    any objection to his filing it yesterday because it

18    didn't come out until yesterday and I have had ample

19    time to review it.  It's the Studio 417 case from U.S.

20    District Court, Western District of Missouri, Southern

21    Division.  This opinion, which I'm not going to

22    significantly disagree with, demonstrates the wisdom of

23    the MDO panel in refusing to consolidate because the

24    denial of the Motion to Dismiss based on the

25    allegations in that complaint bespeaks the importance

1    of policy language differing from policy to policy and

2    alleged facts differing from complaint to complaint.

3            I should ask as a courtesy whether the Court

4    has any objection to me talking about this case that

5    Mr. Rose sent yesterday.

6            THE COURT:  What I would like you to do,

7    Counsel, is argue your Motion to Dismiss.  This Court

8    is bound by the implications of Rule 1:36-3.  While the

9    parties felt compelled to cite to numerous other

10   jurisdictions with respect to their arguments, their

11   respective arguments both on the Motion and in the

12   Opposition, this Court is bound by legal precedent

13   within the State of New Jersey, namely the Appellate

14   Division, and the New Jersey Supreme Court.  With

15   respect to the US Supreme Court, this -- this Court

16   also takes precedent from the US Supreme Court for

17   controlling decisions.  So this Court will give

18   whatever weight is necessary to whatever arguments

19   reflect in the controlling legal precedent set forth in

20   this state as opposed to other states.  So you may

21   proceed with the argument.

22           MR. HARRISON:  Okay, thank you, Your Honor.

23   I just -- I just wanted to make sure that the Court

24   didn't want me to completely disregard this decision.

25   But I'm going to highlight it simply to contrast it

with a case we're looking at in order to argue my

position under New Jersey law.

The _Studio 417_ decision describes a policy

which defines a covered cause of loss, and that's at

page 2 of the opinion, as follows, "Accidental direct

physical loss or accidental direct physical damage."

It goes on to say on the same page, "The policies do

not include and are not subject to any exclusion for

losses caused by viruses or communicable diseases."

Now, I want to be clear about something.  I

want to be clear about a point of agreement that

Franklin Mutual has with the plaintiffs in this case.

At paragraph 36 of the Complaint filed in this case,

plaintiffs recite as follows, "There is no known

instance of Covid-19 transmission or contamination

within the premises of plaintiffs' businesses."  Now,

the declamation of coverage letter that FMI issued

prior to the Complaint being filed in this case because

the Complaint challenges that declamation of coverage

find it among relevant policy provisions the exclusion

of 12(c) for contamination by any virus, et cetera.

Because the complaint expressly asserts that there was

no contamination and because it is our universal duty

to read as accurate all facts alleged in the complaint

and I agree that the contamination exclusion would not

1     apply to this case.  If the complaint had alleged that

2     there was contamination on the premises, then there

3     probably would be direct physical loss, but there would

4     also be exclusion of coverage under that virus

5     exclusion.  So what we're really focused on is the

6     policy language.  In Studio 417, the definition of loss

7     there was physical loss or physical damage.

8              THE COURT:  Okay, but we're concerned about

9     New Jersey.  We're not concerned about the Western

10    District of Missouri; correct?

11             MR. HARRISON:  That is true, Your Honor, but

12    we are concerned about policy language defining direct

13    physical loss, --

14             THE COURT:  Okay, but the --

15             MR. HARRISON:  -- but I'm -- I'm happy to

16    take it --

17             THE COURT:  -- definition (indiscernible) --

18             MR. HARRISON:  -- to our policy language.

19             THE COURT:  -- definition has not been

20    established by any court in this state with the

21    exception of the Wakefern case; correct?

22             MR. HARRISON:  I think that is absolutely

23    correct.

24             THE COURT:  Okay, I just want to establish

25    that for purposes of the record.

1    MR. HARRISON:  Okay, so back to our policy.

2    The business interruption loss that -- of which

3    plaintiffs seek to avail themselves governs loss of

4    income resulting from direct covered loss.  We go to

5    page 9 of the policy form which expressly defines

6    direct covered loss as follows, "The fortuitous direct

7    physical loss as described in Part 1(c), General Cause

8    of Lost Conditions, Coverages A, B, C, which occurs at

9    described premises occupied by you."  Now, the

10   definition is (indiscernible) if it didn't refer -- if

11   it didn't cross-reference another definition, then we'd

12   be fighting over whether the closure of a business

13   because of a risk of virus spread would constitute a

14   fortuitous direct physical loss.

15        However, because it cross-references the

16   description of direct covered loss that's also in the

17   policy at page 8.  We go to the more detailed

18   definition.  Covered loss, "Means fortuitous direct

19   physical damage to or destruction of covered property

20   by a covered cause of loss."  The requirement of direct

21   physical damage to or destruction of (indiscernible) --

22        RECORDING:  (Indiscernible).

23        MR. HARRISON:  -- requirement of direct

24   physical damage to or destruction of covered property

25   distinguishes this case from the Studio 417 case in

that there is the physical damage or destruction

requirement that was absent in that case which also had

--

RECORDING: (Indiscernible) is now in the

conference.

MR. HARRISON: -- I apologize -- which also

had the open-ended concept of loss which was not

defined. Our policy defines loss as requiring that

physical impact.

The Court has reviewed Wakefern I know and

the -- the cases -- the New Jersey cases discussed in

our brief I agree that there is no case directly on

point construing the -- this precise policy language in

the context a claim where there was a closure of a

business because of the risk of contamination by a

virus. But I think that the application of loss that's

set forth in New Jersey and in the other jurisdictions

we've cited as persuasive, although not binding,

compels the conclusion that this did not meet the

policy definition of direct covered loss to satisfy

coverage.

THE COURT: Counsel, let me pose -- let me

pose one question to you. Why didn't the policy then

have specific exclusions for an event such as this?

Meaning for virus proliferation.

1       MR. HARRISON: Well, it -- it precisely has

2   an exclusion for virus proliferation. It does not have

3   an exclusion for a closure of business based on the

4   risk of virus proliferation. I can't speak to the

5   drafters of the policy other than to say this is an

6   unprecedented event. First in my lifetime. First in

7   my parents and our parents. So, yeah, in -- in an

8   ideal world all potential cataclysmic risks could be

9   underwritten and determined in advance as to what we're

10  going to cover and to what extent or whether there

11  should be any coverage at all, but before we get to the

12  absence of an exclusion, and I agree there is no

13  exclusion that would apply on the facts as alleged in

14  this Complaint, we have to satisfy the coverage

15  definition first.

16      THE COURT: You can proceed, Counsel. Thank

17  you.

18      MR. HARRISON: I -- Your Honor, to -- to be

19  candid, I know you've reviewed the papers. I'm happy

20  to address any further questions the Court may have or

21  simply reserve an opportunity to respond to my

22  colleague. I -- I think between our papers and what

23  I've had to say this morning that I've stated our case.

24      THE COURT: Thank you, Counsel. Okay, Mr.

25  Rose, your response?

MR. ROSE:  Thank you, Your Honor.  And just
to try to make sure that there's a clean record
virtually, this is again Sean Rose, Olender Feldman, on
behalf of plaintiff.

So contrary to the insurance industry's well
rehearsed talking points and -- and Mr. Harrison has a
very good brief and very good argument, the simple fact
is that plaintiff and the many other in the -- and
(indiscernible) plaintiffs purchased business owners
policies to insure against, among other things,
unexpected business interruptions.  And what happened
back in March, as we all know because we all lived
through it, that's about as unexpected as you get.
Plaintiffs were forced to close their businesses
because the executive order issued by the State --
well, the State pertinent to here, but issued across
the country in emergency response to the pandemic found
that there is a dangerous condition on plaintiffs'
property.  As a result of those orders, the plaintiffs
closed.  All residents were told to stay at home and
(indiscernible) claims (indiscernible).

Now, as Mr. Harrison pointed out, the
briefing reflects that there are really two main points
of argument that -- that I'll hit quickly because they
are recited at length in the brief is the first

1    (indiscernible) on the direct physical loss issue.  We

2    know from, and just to again bide by Your Honor's

3    directive, we know that under the <u>Gregory Packaging,</u>

4    <u>Inc. versus Travelers Property Casualty Company of</u>

5    <u>America</u> case, which is an unpublished case, but from

6    the District of New Jersey and cited in both Mr.

7    Harrison's and our brief, we know that a dangerous

8    condition on the property can constitute a physical

9    loss.  Now, here, we have an executive order that found

10   that plaintiffs' businesses were deemed unfit and

11   unsafe because of a dangerous condition.  Plaintiffs'

12   loss of income caused by the closure orders concluding

13   that there was a dangerous condition on the property is

14   a direct physical loss.  Alternatively, if we wanted to

15   get into the legal standard, at a minimum, it is

16   plausible the plaintiffs have alleged a direct physical

17   loss here which should defeat a (indiscernible) Motion

18   and allow plaintiffs to pursue discovery, among other

19   things, to discern the true intent behind policy terms

20   which, in some cases, points to coverage but in other

21   cases it may be ambiguous.

22        The second point would be the civil authority

23   coverage and I -- I think here, the Western District of

24   Missouri case has instructed, and I'll get to that in a

25   second, here we -- we, again, we know what happened.

We all lived through it. The closure orders forced
plaintiffs to close and banned occupancy of all non-
essential businesses. In doing so, the closure orders
necessarily not only affected plaintiffs' businesses,
but they affected all -- all properties around
plaintiffs. It was a stay-at-home order. Unless it
was an essential business, everything was closed. It's
alleged -- it -- it's in the Motion and, you know,
beyond that, Your Honor, we all lived through it. We
were all there. So, again, at a minimum, it is
plausible that plaintiffs are entitled to
(indiscernible) coverage here. And unless Your Honor
has any questions, I know the briefing was fairly
detailed.

        THE COURT: Thank you, Mr. Rose. You know,
at the outset, gentlemen, I do commend the both of you
with respect to a very, very difficult topic and
concept in the State of New Jersey with regard to the
interpretation of insurance law. I did find that the
respective briefs were very well drafted.

        Mr. Harrison, do you have a reply at this
point?

        MR. HARRISON: Briefly, Your Honor, yes. Mr.
Rose says the executive order for -- forced closure
based on a finding that there was a dangerous condition

1    on plaintiffs' property.  That's -- that's simply not

2    the case.  The -- the Complaint does not allege that.

3    I understand what he's saying.  It -- it's a -- it's a

4    directive closing down non-essential businesses based

5    on the risk that putting people in proximity to each

6    other indoors could result in transmission of the

7    virus, could -- it could result in the virus sitting on

8    a piece of equipment in one of the plaintiffs'

9    examining rooms, but the Complaint in this case

10   expressly alleges that there has been no known instance

11   of Covid-19 transmission or contamination.

12        I -- I get it that this is business

13   interruption insurance and to quote one of the judges I

14   appeared before in my first year arguing coverage

15   motion, he said, Mr. Harrison, before we turn to the

16   policy terms, everybody knows that when an insured buys

17   insurance for something, their reasonable expectation

18   is that they're going to be covered for whatever might

19   befall them, but then we got to go to the policy

20   language and if indeed coverage was determined by the

21   name of the coverage, business interruption, well, then

22   the insurance industry loses and FMI loses this case

23   because we're not disputing that there was business

24   interruption.  Although if we were to have to dig

25   deeper, we would probably have a dispute over whether

plaintiffs were non-essential businesses, but that's
not what this Motion is about. The law requires that
we look carefully at the policy language. And with
reference to <u>Gregory Packaging</u>, we're talking about the
release of ammonia into the air, talking about
something physically occurring and I think it's -- it's
clear from the plain policy language and the meaning of
the terms, which are precisely defined in the policy,
that in this instance under this policy based on these
allegations there is no direct covered loss.

In -- in asking for discovery to determine
the true intent behind policy terms, right, that's
something you need to speak about briefly. When policy
language is clear, I am not aware of any precedent
which would support denial of a Motion to Dismiss on
the basis that the plaintiff is entitled to conduct
discovery to see what the drafter of the document, who
I can tell the Court was not -- is not an employee of
FMI, had in mind when defining direct covered loss or
covered loss.

There -- there is -- in New Jersey we do have
a -- a big case called <u>Morton International</u> which has
to do with pollution exclusions and that's where our
courts created this -- the concept of regulatory
estoppel where essentially the insurance industry

1    lobbied to insert a particular form of coverage within

2    a policy with an exclusion for -- that applied to

3    environmental losses and essentially the courts found,

4    hey, you came to the Department of Banking and

5    Insurance putting forth this policy language suggesting

6    it would do something and then you went to court and

7    suggested otherwise.  There is no such allegation in

8    this case.  I haven't seen any such allegation even

9    made in the press or -- or by the various

10   (indiscernible) or -- or in any case that's being

11   litigated that I'm aware of.  When the plain policy

12   terms apply plainly and directly to the facts asserted,

13   I'm not aware of any legitimate basis for denying a

14   Motion based on the facts accepted as true in the

15   pleading on the basis that plaintiff wishes to take

16   discovery to see what the defendant meant by policy

17   language that somebody else wrote which the defendant

18   adopted if the plain language controls and is

19   unambiguous and I submit that it does control and it is

20   unambiguous here.

21            THE COURT:  Thank you.  Gentlemen, thank you,

22   very much.  I'm prepared to rule on this Motion.

23            This matter comes before the Court on a

24   Motion Seeking Dismissal of the plaintiffs' Complaint

25   with prejudice pursuant to Rule 4:6-2(e).  The Court

begins with a few general observations concerning the standards governing dismissal motions under Rule 4:6-2(e) by citing Flinn v. -- Flinn v. Amboy National Bank, 40 -- 436 N.J.Super. 274 (App. Div. 2014), "In reviewing a complaint dismissed under Rule 4:6-2(e), the inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint," citing Printing Mart-Morristown versus Sharp Electronics Corp., 116 N.J. 739 at page 746 (1989) and Rieder versus Department of Transportation, 221 N.J.Super. 547 at page 552 (App. Div. 1987).

The essential test as set forth in Green versus Morgan Properties, 215 N.J. 431 at page 451 (Sup. Ct. 2013) is, "Whether a cause of action is 'suggested' by the facts," citing Printing Mart-Morristown versus Sharp Electronics Corp., 116 N.J. at 746 quoting Velantzas versus Colgate-Palmolive Co., 109 N.J. 189 at page 192 (1988).

"A reviewing court searches the complaint in depth and with liberality to ascertain whether the fundamental of a cause of action may be gleaned, even from an obscure statement of claim, opportunity being given to amend if necessary," citing Di Cristofaro versus Laurel Grove Memorial Park, 43 N.J.Super. 244 at page 252 (App. Div. 1957).

1           In the case of Rule 4:6-2(e), Dismissals,

2  "The Court is not concerned with the ability of the

3  plaintiffs to prove the allegation contained in the

4  complaint," citing Somers Construction Co. versus Board

5  of Education, 198 F.Supp. 732, 734 (Dis. NJ. 1961).

6  Instead,

7           "The plaintiffs are entitled to every

8  reasonable inference of fact and the examination of a

9  complaint's allegations of fact required by the

10  aforestated principle should be one that is at once

11  painstaking and undertaken with a generous and

12  hospitable approach,"

13           citing Green versus Morgan Properties, 215

14  N.J. 431 at page 452 quoting Printing Mart-Morristown

15  versus Sharp Electronics Corp., 116 N.J. at 746.

16           Notwithstanding this indulgent standard, "A

17  pleading should be dismissed if it states no basis for

18  relief and discovery would not provide one," citing

19  Rezem Family Associates, LP versus Borough of

20  Millstone, 423 N.J.Super. 103 at page 113 (App. Div.

21  2011), cert. denied and the appeal was dismissed at 208

22  N.J. 366 (2011). See also Sickles versus Cabot Corp.

23  379 N.J.Super. 100 at page 106 (App. Div. 2005) cert.

24  denied at 185 N.J. 297 (2005).

25           In those rare instances, as cited in Smith

1  versus SBC Communications, Inc., 178 N.J. 265 at page

2  282 (2004), a motion to dismiss pursuant to Rule 4:6-

3  2(e) ordinarily is granted without prejudice.  See

4  Hoffman versus Hampshire Labs Incorporated, 405

5  N.J.Super. 105, 116 (App. Div. 2009).

6         The defendant, Franklin Mutual Insurance

7  Company, hereinafter FMI, issued a business owners

8  policy to plaintiff, Optical Services USA/JC1 under

9  policy number SBP2598006 with effective dates of

10  October 5, 2019 to October 5, 2020.  FMI issued the

11  business owners policy to the plaintiff, Stong OD Ewing

12  NJ, LLC, hereinafter Stong OD, bearing policy number

13  SBP2613680 with effective dates of April 1, 2020 to

14  April 1, 2021.  Optical Services USA/JC1 and Stong OD

15  filed separate claims seeking loss of business income

16  caused by the closure mandated by Governor Murphy's

17  March 21, 2020 Executive Order Number 107 suspending

18  the operation of non-essential retail businesses on the

19  account of the Covid-19 pandemic.  Plaintiffs closed

20  their businesses on March 20, 2020 and have not

21  reopened to date.  Plaintiffs allege that Executive

22  Order Number 107 mandated the closure of their

23  businesses.  FMI issued letters dated April 6, 2020 and

24  April 14, 2020 to Optical Services USA/JC1 and Stong OD

25  denying their claims for business income and related

expenses. Plaintiffs, Optical Services USA, LLC,
Optical Services USA-WO, Re and Le Holdings, LLC were
not named insureds on either policy.

Both policies contained the BU04010110
Business Owners Policy Form. The plaintiffs allege
that the -- the plaintiffs allege that Optical Services
USA/JC1, Optical Services USA, LLC, Optical Services
USA-WO, Re and La -- and Le Holding, LLC and Stong OD
Ewing NJ, LLC purchased business interruption insurance
from insurers to protect their business from an -- an
unanticipated crisis. The plaintiffs further allege
that the policies issued by FMI provide coverage for
loss of income resulting from a necessary interruption
of plaintiffs' businesses caused by direct covered
losses and temporary closures required by orders of a
civil authority.

A Complaint for a Declaratory Judgment in
this action was filed on June 25, 2020. The Complaint
also included a Demand for Trial by Jury. No answer
has been filed by the defendant, FMI. Therefore, the
discovery end date has not been established in this
case.

On July 15, 2020, the defendant, FMI, filed a
Motion Seeking Dismissal of the Complaint pursuant to
Rule 4:6-2(e). Within days of filing the Complaint,

the defendant, FMI, filed the within Motion to Dismiss.
It is clear that there is no established record in this
case and there has been no discovery presented to the
Court for consideration with respect to the arguments
and events by respective legal counsel.

Notwithstanding same, the defendants argued three
points before this Court.  The first legal argument is
that the Court should dismiss the complaint for failure
to state a legally cognizable claim.  The second legal
argument is that the plaintiffs did not sustain direct
physical loss or direct physical damage to or
destruction of covered property precluding coverage for
business income or extra expenses under the FMI policy.
Lastly, the defendants argue that the plaintiffs
occupancy of their respective properties was not
prohibited by civil authorities because of a loss at a
local premises not owned or occupied by the plaintiffs
precluding civil authority coverage under the FMI
policies.

The plaintiffs argue before this Court that
they state claims for coverage under the policies
because they suffered a direct covered loss and were
forced to close their business by order of a civil
authority.  Plaintiffs further allege that they state
claims for loss of income coverage because they

suffered a direct covered loss under the policy and
they state claims for civil coverage because the
closure order prohibited the plaintiffs from accessing
their business.

Naturally, each of the respective arguments
advanced by the parties requires a fact-sensitive
analysis wherein the respective parties have failed to
present a sufficient record before this Court for a
legal determination of their respective positions.
There has been no discovery produced to the Court for
consideration, no affidavits, no certifications, or
sworn testimony derived from depositions.  In fact,
discovery has not been undertaken by the parties with
respect to the declaratory relief sought in the
Complaint.  Notwithstanding these deficiencies, the
Court will endeavor to address the legal arguments
advanced by the respective parties on the extremely
limited record provided to the Court.

The defendant, FMI, concedes that the
plaintiffs' business operations were interrupted by an
executive order based on the risk of the Covid-19 virus
transmission throughout the State of New Jersey.  The
pivotal issue before this Court is the parties'
interpretation of the subject policy language and FMI's
claim denial premised on a narrow interpretation of the

terms of the subject policies.  The issue before this
Court is the interpretation of a direct covered loss
under the policy and whether or not there was physical
damage to the plaintiffs' business.

The plaintiffs argue that the loss of
physical functionality and the use of their business
constitutes a covered loss under the policies.  The
plaintiffs argue that Governor Murphy's executive order
prohibited access to the plaintiffs' premises.

FMI argues that the plaintiffs failed to
state a claim for civil authority coverage because the
complaint does not allege that property damage occurred
elsewhere leading to the loss of access to plaintiffs'
business.  The defendant acknowledged in their moving
papers that presumably the plaintiffs will argue that
while their properties were not physically damaged,
they sustained a physical loss by operation of the
Governor's executive order.  FMI argues that the
plaintiffs' loss of use of their respective properties
does not constitute a direct physical loss and
therefore is not a direct covered loss defined by the
policies.

A simple review of the moving papers
indicates that the defendant has not provided this
Court with any controlling legal authority to support

their version of the interpretation of the defined
terms in the policy.  In fact, there is limited legal
authority in the State of New Jersey addressing this
issue.  This is not surprising to the Court as the
State of New Jersey was recently faced with a historic
event which was unprecedented with respect to the
losses sustained by businesses across the State of New
Jersey due to the proliferation of the Covid-19
pandemic.  The defendant argues that there is a plain
meaning of "direct physical loss" and the closure of
the plaintiffs' business does not qualify for business
-- I'm sorry, qualify for purposes of coverage.  This
is a blanket statement unsupported by any common law in
the State of New Jersey or by a blanket review of the
policy language.  Moreover, there has been no discovery
taken in this matter which would provide guidance to
the Court with respect to a Motion to Dismiss filed
under Rule 4:6-2(e).

Pursuant to the legal authority recited by
this Court with regard to the standards associated with
filing such a motion, the plaintiff should be permitted
to engage in issue-oriented discovery and also be
permitted to amend its complaint accordingly prior to
an adjudication on the merits of any policy language.
Such a motion is premature at best.

1    It is noteworthy to mention that the

2    plaintiffs' argument set forth to this Court that the

3    loss of use of their business because the State of New

4    Jersey deemed all non-essential businesses unsafe

5    constitutes a direct covered loss under the policy is

6    the pivotal issue in the absence of any issue-oriented

7    discovery on this topic is whether direct physical loss

8    and direct physical damage encompasses closure for

9    businesses that bears no specific -- relationship to a

10   specific condition on the property pursuant to an

11   executive order.  The plaintiffs counter that argument

12   by alleging that the executive order of the Governor

13   deemed all non-essential businesses unsafe given the

14   risk of transmission of Covid-19 thus the closure order

15   had a specific relationship to a specific condition

16   within the plaintiffs' business.

17        The plaintiffs provide a citation from

18   Wakefern Food Corp. versus Liberty Mutual Fire

19   Insurance Company, 406 N.J.Super. 524 (App. Div. 2019)

20   to support their argument.  Their argument based on the

21   holding of Wakefern is that there was a finding of

22   coverage for a grocery store that lost power when an

23   electrical grid and transmission lines were physically

24   incapable of performing their essential function of

25   providing electricity even though they were not

necessarily damaged.  The Court in Wakefern did hold
that,

    "Since the term "physical" can mean more than
material alteration or damage, it is incumbent on the
insurer to clearly and specifically rule out coverage
in the circumstances where it was not to be provided."

    Citing Wakefern versus Liberty Mutual
Insurance Company, 406 N.J.Super. at 542.  Also citing
Customized Distribution Services versus Zurich
Insurance Co., 373 N.J.Super. 480 at page 491 (App.
Div. 2004), cert. denied at 183 N.J. 214 (2005).

    The Court finds such an argument compelling
for purposes of surviving a Motion to Dismiss pursuant
to Rule 4:6-2(e) in the absence of any complete record
for disposition.  Again, the Court notes in the absence
of the legal precedent set forth in Wakefern, there is
a lack of controlling legal authority presented to the
Court for consideration in this regard.

    "When interpreting insurance contracts, the
intention of the parties must be determined from the
language of the policy," citing Stone v. Royal
Insurance Company, 211 N.J.Super. 246 at page 248 (App.
Div. 1986).  "When the terms of the contract are clear
and unambiguous, the Court must enforce the contract as
written."  That is an incitation at page 248.

1    The language which forms the basis of the

2    complaint and the filing of a Motion to Dismiss is

3    subject to further analysis and interpretation.  By

4    operation of the distinct and opposite interpretations

5    of the language set forth before the Court by the

6    parties with no other clarity from the record having

7    been established to date, which the Court notes is

8    largely non-existent, this Court reaches the inevitable

9    conclusion solely for purposes of disposition of this

10   Motion that the plaintiff should be afforded the

11   opportunity to develop their case and prove before this

12   Court that the event of the Covid-19 closure may be a

13   covered event under the Coverage C, Loss of Income,

14   when occupancy of the described premises is prohibited

15   by civil authorities.  There is an interesting argument

16   made before this Court that physical damage occurs

17   where a policy holder loses functionality of their

18   property and by operation of civil authority such as

19   the entry of an executive order results in a change to

20   the property.

21   The plaintiffs are offering in advancing in a

22   novel theory of insurance coverage in this matter that

23   warrants a denial of the Motion to Dismiss at this

24   early stage of the litigation.  As such, this Court

25   must afford the plaintiffs an opportunity to engage in

1    issue-oriented discovery with FMI in order to fully

2    establish the record with respect to direct covered

3    losses and to amend the Complaint accordingly if

4    required.  To that end, the Motion to Dismiss is

5    denied.

6            Gentlemen, I will have an order prepared and

7    most likely uploaded by this afternoon.  Again, I want

8    to thank you for your briefs and I thank you for your

9    legal arguments here today.

10           MR. HARRISON:  Thank you, Your Honor.  Have a

11   good weekend.

12           THE COURT:  Thank you, gentlemen.

13           (Proceeding concluded at 10:08:29 a.m.)

14                   *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I, Laura Scicutella, the assigned transcriber, do hereby certify the foregoing transcript of proceedings on CourtSmart, Index No. from 9:30:49 to 10:08:29, is prepared to the best of my ability and in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings, as recorded.


/s/ Laura Scicutella                    AD/T 685
Laura Scicutella                       AOC Number

Phoenix Transcription LLC               8/14/2020
Agency Name                              Date