# EXHIBIT A

**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-4647-GW-MAAx | Date | December 3, 2020 |
| Title | *Geragos & Geragos Engine Company No. 28, LLC v. Hartford Fire Insurance Company, et al.* | | |

| | | |
|---|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Matthew M. Hoesly | Robyn C. Crowther | |
| | Sarah D. Gordon | |

**PROCEEDINGS:** **TELEPHONIC HEARING ON DEFENDANT AND COUNTER CLAIMANT SENTINEL INSURANCE COMPANY, LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS [29]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. Based on the Tentative, and for reasons stated on the record, the Court GRANTS the motion and dismisses this action with prejudice.

: 07

Initials of Preparer   JG

***Geragos & Geragos Engine Company No. 28, LLC v. Hartford Fire Ins. Co. et al.***; Case No. 2:20-cv-04647-GW-(MAAx); Tentative Ruling on Motion for Judgment on the Pleadings

**I.     Background[1]**

As in many other similar cases being litigated across the country, plaintiff Geragos & Geragos Engine Company No. 28, LLC ("G&G") – the owner and operator of a commercial office building in downtown Los Angeles – disagrees with its property insurance provider over whether its policy covers losses due to restrictions imposed to combat the ongoing COVID-19 pandemic. In response to various city- and state-government orders for individuals to shelter at home and for non-essential businesses to close down, several of G&G's tenants have fallen behind on rent payments, and in some cases have closed down their businesses and moved out. Compl. ¶ 19.

In the summer of 2019, before the pandemic hit, G&G purchased a property insurance policy (the "Policy"[2]) from defendants Hartford Fire Insurance Company and Sentinel Insurance Company. *Id.* ¶ 6. The Policy spanned one year, from July 4, 2019 through July 4, 2020. It contained several coverage provisions that purported to cover losses attributable to "direct physical loss of or physical damage to" the covered property. *See* Policy at 46, 54.

G&G argues that its loss of business income caused by the various shutdown orders is covered by the Policy. On March 20, 2020, G&G submitted a claim to Sentinel for reimbursement. Compl. ¶ 50. Four days later, Sentinel denied the claim, concluding that G&G had not suffered a physical loss of or damage to its property and that in any event a "virus exclusion" in the Policy would also bar G&G's claims. Ans. at 18.

G&G disputes Sentinel's denial of its claim and filed this lawsuit against Hartford and Sentinel in state court, asserting three claims: (1) a claim for declaratory relief regarding the Policy's coverage of G&G's losses; (2) a claim for breach of the implied duty of good faith and fair dealing; and (3) a violation of California's insurance code. Defendants removed the case to federal court based on diversity jurisdiction. *See* NoR at 1. Before the Court is Sentinel's motion for judgment on the pleadings.

---

[1] The following abbreviations are used for the filings: (1) Notice of Removal ("NoR"), ECF No. 1; (2) Complaint ("Compl."), ECF No. 1-1; (3) Defendant's Answer to Complaint and Counterclaim for Declaratory Relief ("Ans."), ECF No. 22; (4) Business Owner's Policy ("Policy"), ECF No. 22-1.

[2] *See supra* note 1; ECF No. 22-1.

1

**II.     Legal Standard**

Rule 12(c) allows for any party to move for judgment on the pleadings after the pleadings are closed but within such time as not to delay the trial.  Besides being available to plaintiffs, the other major difference between a Rule 12(c) motion and Rule 12(b)(6) motion is the time of filing. *Dworking v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  The standard applied on a Rule 12(c) motion is essentially the same as Rule 12(b)(6) motions, meaning a judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  A defendant is not entitled to judgment on the pleadings if the complaint raises issues of fact, which if proved would support recovery.  Similarly, if a defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings.  *General Conference Corp. Of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

**III.    Discussion**

The interpretation of the Policy is governed by California law.  *See generally Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 718-21 (1993) (principal location of insured risk is most important consideration in determining which state's law applies to insurance policy); Restatement (Second) of Conflict of Laws § 193 (rights created by policy are determined by the local law of the state which the parties understood was to be the principal location of the insured risk).

"When determining whether a particular policy provides a potential for coverage," a court "[is] guided by the principle that interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995).  "[A]ny ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates."  *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 807 (1982).  The purpose is "to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy."  *Id.* at 808.  "Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured, exclusionary clauses are interpreted narrowly against the insurer."  *Id.*

A. <u>The terms of the insurance policy</u>

The Policy's Special Property Coverage Form begins with the statement that Sentinel "will pay for *direct physical loss of or physical damage to* Covered Property at the premises . . . caused by or resulting from a Covered Cause of Loss." Policy at 45 (emphasis added). "Covered Causes of Loss" in turn are defined as "RISKS OF DIRECT PHYSICAL LOSS," subject to some exclusions and limitations. *Id.* at 46.

G&G argues that it is entitled to coverage under three provisions in the Policy: (1) Business Income; (2) Extra Expense; and (3) Civil Authority. Opp. at 4, 6.

The Business Income coverage provides that Sentinel:

> will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by *direct physical loss of or physical damage to* property at the "scheduled premises" . . . caused by or resulting from a Covered Cause of Loss.

Policy at 54 (emphasis added). Similarly, the Extra Expense coverage provides that Sentinel:

> will pay reasonable and necessary Extra Expense you occur during the 'period of restoration' that you would not have incurred if there had been no *direct physical loss or physical damage to* [the covered property].

*Id.* (emphasis added). Finally, the Civil Authority coverage extends to:

> Apply to the actual loss of Business Income you sustain when access to [the covered property] is specifically prohibited by order of a civil authority as the direct result of a *Covered Cause of Loss* to property in the immediate area of your [covered property].

*Id.* (emphasis added).

    B. <u>Whether G&G has suffered from any "direct physical loss of or physical damage to" its property[3]</u>

All of the three coverage provisions, which G&G argues apply to its situation, require that G&G's property suffer from some "direct physical loss" or "physical damage."

Several courts in this district (including this Court) and elsewhere across the nation have found that COVID-related restrictions on commercial activity and individuals' activities do not constitute "direct physical loss" or "physical damage" to property in the insurance context involving nearly identically-worded provisions. In fact, in a lawsuit brought by a restaurant located in the very same G&G building at issue in this case, a court in this district held that the restaurant had not suffered any "direct physical loss or direct physical damage" due to the COVID-

---

[3] To be clear, the reasoning also applies to whether G&G has suffered any "direct physical loss" (without the preposition "of") that would be a Covered Cause of Loss under the Civil Authority provision.

3

19 restrictions imposed by local and state governments. *See Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-cv-04423, 2020 WL 5938689, at *1 (C.D. Cal. Oct. 2, 2020); *see also 10E, LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-cv-04418, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) (finding that plaintiff had not suffered any "direct physical loss of or damage to" property); *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, No. 20-cv-06954, 2020 WL 5742712 (C.D. Cal. Sept. 10, 2020) (same).

G&G has not offered a persuasive argument for why all those courts decided the issue incorrectly. It repeats the same arguments those courts all considered in their rulings. For example, G&G's argument that a physical alteration is not required is based primarily on a district court's reasoning in *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 17-cv-04908, 2018 WL 3829767 (C.D. Cal. July 11, 2018). *See* Opp. at 7-8. However, that very same district court judge also presided over the *Mark's Engine Co. No. 28 Rest.* case. The judge considered the exact same argument that G&G raises here and did not find it persuasive. *See Mark's Engine Co. No. 28 Rest.*, 2020 WL 5938689, at *4 (observing that "to the extent Plaintiff relies on this Court's order in *Total Intermodal* for the proposition that "direct physical loss of" encompasses deprivation of property without physical change in the condition of the property, the Court notes that such an interpretation of an insurance policy would be without any manageable bounds").

Given the volume of similar COVID-19 insurance litigation that is taking place across the nation, it is not a surprise that some courts will have decided in favor of the insureds. The cases cited to by G&G in support of its argument are those of state court decisions applying the law of other states. *See* Opp. at 10-11 (citing to North Carolina and Pennsylvania court decisions).[4] The Court is not persuaded that these handful of decisions are enough to outweigh the much greater volume of case law going the other way.[5]

---

[4] G&G also cites to a federal district court's decision applying Florida law. *See* Opp. at 10 (citing *Urogynecology Specialist of Florida LLC v. Sentinel Insurance Company, LTD*, No. 6:20-cv-01174, 2020 WL 5939172 (M.D. Fla. Sept. 24, 2020)). While that court denied the insurer's motion to dismiss the insured's complaint, it was not presented with all the arguments raised here. While the insurer there argued that a virus exception applied, it did not argue – and therefore, the court did not consider – that the insured had not suffered any "direct physical loss" of or "physical damage" to its property. Furthermore, the court's denial was based in part on the fact that the parties failed to provide the court with all the relevant policy documents.

[5] This Court is aware of a single-page minute order from a California superior court overruling a demurrer without citation to any applicable law in *Best Rest Motel Inc. v. Sequoia Ins. Co.*, No. 37-2020-00015679-CU-IC-CTL (San Diego Cty. Super. Ct. Sept. 30, 2020). However, that decision does not alter the Court's analysis herein.

4

5

Because the Court finds that G&G has not suffered any "direct physical loss of or physical damage to" its property, the Court also finds that G&G is not entitled to any reimbursement under the Policy.  The Court does not reach the issue of whether the virus exclusion applies.  Because all three of G&G's claims are based on Sentinel's allegedly wrongful denial of coverage under the Policy, the Court dismisses all those claims.

## IV.  Conclusion

Based on the foregoing discussion, the Court would grant the motion.  At the hearing, the Court would discuss with the parties whether there should be leave to amend.