# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                  :

10012 HOLDINGS, INC. d/b/a GUY HEPNER,  :
                            Plaintiff,  :
                                       :         20 Civ. 4471 (LGS)

           -against-              :
                                     :        **OPINION AND ORDER**

SENTINEL INSURANCE COMPANY, LTD.,  :
                       Defendant.  :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

In this insurance dispute, Plaintiff seeks coverage for business losses allegedly resulting from government restrictions on non-essential businesses during the COVID-19 pandemic. Defendant moves to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted.

**I.    BACKGROUND**

The following facts are taken from the Complaint and are assumed to be true for purposes of this motion. *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020).

Plaintiff operates an art gallery and dealership in New York City. In 2019, Plaintiff obtained a business property insurance policy (the "Policy") from Defendant. The Policy provides "Business Interruption" coverage for loss of certain income:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

As relevant here, the Policy defines "Business Income" as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred . . . ."  The Policy defines "suspension" as "[t]he partial slowdown or complete cessation of your business activities" if "part or all of the 'scheduled premises' is rendered untenantable as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy."  The Policy defines "Covered Causes of Loss" as "risks of direct physical loss," subject to various exclusions and limitations not relevant here.

The Policy also provides "Extra Expense" coverage.  Those provisions cover "reasonable and necessary Extra Expense[s] you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises.'"  The Policy also provides "Civil Authority" coverage:  "This insurance is extended to apply to the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises.'"

From March 2020 onwards, Plaintiff suspended business operations in accordance with orders issued by the Governor of New York and Mayor of New York City, which limited operations for non-essential businesses during the COVID-19 pandemic (the "Civil Orders").  Plaintiff suffered losses of business and incurred expenses as a result, and requested Defendant to reimburse it under the Policy's "Business Interruption," "Extra Expense" and "Civil Authority" provisions.  Defendant refused, and Plaintiff brought this action, asserting claims for breach of contract and declaratory relief.

2

## II.    STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers, New York*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).  To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Under principles of New York contract interpretation,[1] "the court's initial task is to attempt to ascertain the parties' intent from the language of the insurance contract itself . . . constru[ing] the policy as a whole; all pertinent provisions of the policy should be given meaning, with due regard to the subject matter that is being insured and the purpose of the entire contract."  *Westchester Fire Ins. Co. v. Schorsch*, 129 N.Y.S.3d 67, 74 (1st Dep't 2020) (internal

---

[1] The Policy does not explicitly state what law governs its interpretation and enforcement.  The parties apply New York law in their moving papers.  Accordingly, this decision is based on New York Law.  *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009); *accord PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 486 (S.D.N.Y. 2017).

citation omitted).  Courts must take care not to "make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation." *Keyspan Gas East Corp. v. Munich Reinsurance Am., Inc.*, 96 N.E.3d 209, 216 (N.Y. 2018).  "[A]n unambiguous policy provision must be accorded its plain and ordinary meaning, and the court may not disregard the plain meaning of the policy's language in order to find an ambiguity where none exists." *Chiarello ex rel. Chiarello v. Rio*, 59 N.Y.S.3d 129, 131 (2d Dep't 2017) (alteration in original). "[T]he issue of whether a provision is ambiguous is a question of law," and "focuses on the reasonable expectations of the average insured upon reading the policy." *Hansard v. Fed. Ins. Co.*, 46 N.Y.S.3d 163, 166 (2d Dep't 2017) (internal quotation marks and citations omitted).

## III.    DISCUSSION

### A.    Business Interruption Coverage

The Policy provides Business Interruption coverage for loss of "Business Income" sustained due to "necessary suspension" of operations, where such suspension is caused by "direct physical loss of or physical damage to property."  "Business Income" is income that Plaintiff would have earned "if no direct physical loss or physical damage had occurred."  The Complaint alleges that the Civil Orders caused a "direct physical loss" of Plaintiff's business premises, thus triggering the Policy's Business Interruption provisions.

New York courts interpreting substantially identical language -- "loss of, damage to, or destruction of property or facilities" -- have found it "limited to losses involving *physical damage to the insured's property*." *Roundabout Theatre Co. v. Cont'l Cas. Co.,* 751 N.Y.S.2d 4, 8 (1st Dep't 2002) (emphasis added); *see also RSVT Holdings, LLC v. Main St. Am. Assur. Co.*, 25 N.Y.S.3d 712, 714 (3d Dep't 2016) (noting that policy covering "direct physical loss of or damage to" provided coverage only for "direct damage to plaintiffs' property"); *Soc. Life*

*Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311, Transcript of Show Cause Hearing at 15 (S.D.N.Y. May 14, 2020), *available at* Dkt. No. 21-5 (in declining to provide business interruption coverage for shutdowns resulting from the Civil Orders, noting "New York law is clear that this kind of business interruption needs some damage to the property to prohibit [a person] from going [there]"); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (applying *Roundabout Theatre* to find no "direct physical loss or damage" of or to the premises, where access was lost due to a government utility shutting off power during hurricane recovery); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005) (construing New York law and the phrase "direct physical loss or damage" to require that "the interruption in business must be caused by some physical problem with the covered property"); *United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006).  In so holding, courts have declined to interpret such language to include "loss of use" of the property under New York law. *Roundabout Theatre*, 751 N.Y.S.2d at 6.  Nothing in the Complaint plausibly supports an inference that COVID-19 and the resulting Civil Orders physically damaged Plaintiff's property, regardless of how the public health response to the virus may have affected business conditions for Plaintiff.  The Complaint does not state a claim for "loss" of the insured property.

Plaintiff claims the Policy is ambiguous because it covers both "loss of" and "damage to" Covered Property.  Plaintiff argues that "loss" and "damage" cannot mean the same thing, as New York law requires contracts to be interpreted to give each term effect.  While that principle is true, the term "loss" is unambiguous in this case in light of New York law which interprets such language as not including the "loss of use" alleged by the Complaint.  *Id.* at 8; *see also Newman Myers*, 17 F. Supp. 3d at 331 ("The words 'direct' and 'physical,' which modify the

phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure.").

Plaintiff argues that *Roundabout Theatre* is factually distinct, claiming that the policy in that case was limited to "property or facilities," including the insured theater building, but that the Policy in this case sweeps more broadly to cover loss of business generally.  Plaintiff cites the fact that the Policy covers "Covered Property" rather than "property."  As relevant here, "Covered Property" is defined as "Property you own that is used in your business."  From that definition, Plaintiff claims that while the Policy includes loss of physical items -- "buildings, structures, fixtures, and the like" -- it also includes "much more," including, presumably, loss of customer access to Plaintiff's premises and concomitant loss of business due to the public health crisis.  Plaintiff does not explain, nor does the Policy's plain language support, the conclusion that insurance against loss of "Property you own that is used in your business" encompasses business loss due to the Civil Orders limiting customer access to Plaintiff's business.  *See Roundabout Theatre*, 751 N.Y.S.2d at 6; *Newman Myers*, 17 F. Supp. 3d at 331.  Instead, the Policy's plain language limits coverage to property that Plaintiff "own[s]" "use[s]" in its business, which must suffer some direct physical harm under controlling state law.

Plaintiff points to the "Coverage" section of the Policy, which states that Defendant "will pay for direct physical loss of or physical damage . . . caused by or resulting from a Covered Cause of Loss."  Plaintiff argues that because a "Covered Cause of Loss" includes "risks of direct physical loss," Defendant agreed to cover business lost due to the risk of COVID-19 on Plaintiff's premises.  Plaintiff does not explain how this language implicates the Business Interruption provisions cited in the Complaint.  This provision only provides coverage for "direct

6

physical loss of or physical damage," which the Complaint does not allege for the reasons given above.

Finally, Plaintiff notes that the Policy is an all-risk policy, under which "losses caused by any fortuitous peril not specifically excluded under the policy will be covered." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006). This argument is unpersuasive because, as described above, the Policy's plain language unambiguously does not cover business lost due to the Civil Orders.

**B.      Extra Expense Coverage**

The Policy's "Extra Expense" coverage applies to expenses incurred during a period of restoration of the premises following a "direct physical loss or physical damage to" the covered property. Because, as described above, the Complaint does not allege a direct physical loss, the Complaint fails to state a claim for Extra Expense coverage.

**C.      Civil Authority Coverage**

The Policy's "Civil Authority" coverage applies to losses sustained when access to Plaintiff's premises is "prohibited by order of a civil authority *as the direct result of a Covered Cause of Loss* to property in the immediate area" of Plaintiff's premises (emphasis added). A "Covered Cause of Loss" includes "risks of direct physical loss." The relevant questions are whether the Complaint alleges (1) losses sustained because the Civil Orders prohibited access to Plaintiff's premises and (2) that such prohibition was a direct result of a risk of direct physical loss to property in the immediate area of Plaintiff's premises.

The Complaint does not plausibly allege losses under the Civil Authority provisions. The Complaint claims that "a Covered Cause of Loss [a risk of direct physical loss] cause[d] damage to property near the insured premises, the civil authority prohibit[ed] access to property near the

7

insured premises, and the civil authority action [was] taken in response to dangerous physical conditions."  It is plausible that the risk of COVID-19 being physically present in neighboring properties caused state and local authorities to prohibit access to those properties.  But the Complaint does not allege that these closures of *neighboring* properties "direct[ly] result[ed]" in closure of Plaintiff's *own* premises, as the Civil Authority provisions require.  Instead, the Complaint alleges that Plaintiff was forced to close for the same reason as its neighbors -- the risk of harm to individuals on its own premises due to the pandemic.  Put differently, the Complaint does not plausibly allege that the potential presence of COVID-19 in neighboring properties directly resulted in the closure of Plaintiff's properties; rather, it alleges that closure was the direct result of the risk of COVID-19 at Plaintiff's property.  *See United Air Lines*, 439 F.3d 128, 134–35 (2d Cir. 2006) (denying recovery because nationwide shutdown of airport facilities due to risk of terrorism did not directly result from physical damage to neighboring properties).

        Although not necessary for the Court's decision, this conclusion is confirmed by other provisions of the Policy.  First, the Policy excludes coverage for pollutants on Plaintiff's premises.  "Pollutants" are broadly defined as "any . . . material which causes or threatens to cause physical loss, physical damage, impurity to property, unwholesomeness, undesirability . . . loss of use of property, or which threatens human health or welfare."  Second, the Policy excludes coverage for costs associated with any ordinance or law requiring any insured to "monitor, clean up, remove, contain, treat . . . or in any way respond to" to "bacteria or virus."  The Policy thus contains provisions that explicitly exclude coverage for any costs associated with containing the presence of harmful substances similar to COVID-19 on Plaintiff's own premises.  By contrast, the Civil Authority provisions address a factually distinct situation --

when some dangerous condition on neighboring premises forces a shutdown of Plaintiff's premises.  Construing the "policy as a whole" to "ascertain the parties' intent" and giving "all pertinent provisions of the policy meaning," *Westchester Fire*, 129 N.Y.S.3d at 74, the "average insured" reading the Policy would not have a "reasonable expectation[]" that the Civil Authority provisions' plain language -- which addresses closures due to dangerous conditions on neighboring property -- also encompasses a situation covered elsewhere in the Policy, *i.e.* the presence of harmful substances on the insured's own property, *Hansard*, 46 N.Y.S.3d at 166.

### D.  Leave to Replead

Plaintiff seeks leave to amend its Complaint.  Leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a).  "However, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."  *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *accord Olson v. Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020).  Leave to amend also may be denied where the plaintiff "fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).  Leave to amend is denied because the Policy does not provide coverage for the loss Plaintiff suffered.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED with prejudice. The Clerk of Court is respectfully directed to close the motion at Docket Number 19 and the case.

Dated: December 15, 2020
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**